The S. C. Hall Lumber Co. v. Matilda Gustin et al.

*Depositions—Duress—Complaint of fraud—Lis pendens in cross-suit— Covenant against incumbrances.*

1. An order to take testimony before a commissioner cannot be entered until the expiration of the time allowed for claiming examination in open court (Ch. Rule 47); and this cannot be claimed until the cause is at issue as to all defendants or until those who have not answered are defaulted.

2. A deposition prematurely taken is properly suppressed; and if not suppressed would be set aside by a rightful claim to have the testimony taken in open court.

3. There is no duress, as matter of law, when one who, with full knowledge of all facts, releases his claim of equities to those who refuse to recognize it and insist upon an adverse claim, does so in order to induce them to surrender property, the right to which is disputed and which they have detained under a claim of ownership.

4. A fraudulent settlement is voidable only, and that by a party thereto and not by a stranger.

5. A complaint of fraud is of no significance if made by a stranger to the suit in which it is involved and if he acquiesces in it without any attempt to set aside the fraudulent arrangement.

6. A wrong to one person gives no right of action to another whom it incidentally injures, unless it is a wrong to him also.

7. A suit and cross-suit constitute one cause, and notice of the suit is notice of the cross-suit also. So *held* in the case of a lis pendens filed in an original foreclosure suit, but not in a cross-suit for fore-closure; it was constructive notice to all the defendants.

8. A covenant against incumbrances is not a covenant to defend a suit upon an incumbrance.

Appeal from Muskegon. (Russell, J.) June 25.—Sept. 23.

BILL to clear title. Defendants Gustin appeal. Affirmed.

*L. N. Keating, Edwin Potter* and *A. Dickerman* for appellants.

*John E. More* for complainant appellee. A purchaser pendente lite takes subject to the determination of the suit: 2 Bacon's Works 479: see How. Stat. § 6619; *Baker v. Pierson* 5 Mich. 461; *Alterauge v. Christiansen* 48 Mich. 60; *Heim v. Ellis* 49 Mich. 241; 1 Story Eq. Pl. § 405; 2 id. §§ 156, 351; Adams' Eq. 157; Pomeroy's Eq. Jur. 633; *Newman v. Chapman* 14 Am. Dec. 766 note; *Bishop of Winchester v. Paine* 11 Ves. 194; *Murray v. Ballou* 1 Johns. Ch. 576; *Inloe's Lessee v. Harvey* 11 Md. 524; *Stoddard v. Myers* 8 Ohio 209; *Ferrier v. Buzick* 6 Ia. 258; *Blanchard v. Ware* 37 Ia. 305: 43 Ia. 530; *Tilton v. Cofield* 93 U. S. 168; *Warren County v. Marcy* 97 U. S. 105–6; *Whiteside v. Haselton* 4 Sup. Ct. Rep. 1; *Fuller v. Scribner* 16 Hun 130: 76 N. Y. 190; *Jones v. McNarrin* 68 Me. 334; *National Bank v. Sprague* 21 N. J. Eq. 535; a cross-bill is a mode of defense: *Richards v. Todd* 127 Mass. 167: 2 Dan. Ch. Pr. (Perk. ed.), 1649; and the original and cross-bill are but one cause: id. 1653; *Galatian v. Erwin* 1 Hopk. 54; a cross-bill is brought by a defendant against a plaintiff or other parties in a former bill depending, touching the matter in question in that bill: 2 Dan. Ch. Pr. 1647; Mitford Eq. Pl. 80, 81; 1 Hoffman Ch. Pr. 345; 2 Barb. Ch. Pr. 128; Story's Eq. Pl. §§ 389, 392, 393, 399, 400, 402; a bill which introduces

other distinct matters, is an original bill, and the suits are separate and distinct: *Andrews v. Kibbee* 12 Mich. 96; a cause is not at issue under Chancery Rule 47 until a replication has been filed to the answers of those defendants who have answered, if any, and an order pro confesso entered as to all other defendants: *Graham v. Elmore* Har. Ch. 267; *Deford v. Mehaffy* 13 Fed. Rep. 481.

COOLEY, C. J.   The original bill in this cause was filed in the name of Stephen C. Hall as complainant, against Matilda Gustin, Alpheus Gustin, Silas Bannister and Albert H. Stewart as defendants.   After it was filed Hall's interest was transferred to the corporation known as The S. C. Hall Lumber Company, and by stipulation the bill was amended so as to substitute the lumber company as complainant.   The following is a synopsis of the bill as originally filed.

The bill avers that complainant is the owner in fee of certain parcels of land in Muskegon, which are particularly described, upon one of which is situated a steam saw-mill, and that he has been in possession of the same as owner from December 30, 1879.   It then proceeds to trace title as follows:

It avers that on November 22, 1872, Asa M. Allen gave to Theo. B. & Albert B. Wilcox a mortgage on said premises, which was duly recorded December 9, 1872, and that on November 12, 1873, said T. B. & A. B. Wilcox assigned and transferred one of the payments secured by the mortgage to the Lumberman's National Bank of Muskegon, as collateral security for the payment of a debt which the assignors owed the bank, and that on April 14, 1874, said T. B. & A. B. Wilcox, L. C. Paine Freer and Sextus N. Wilcox, as complainants, filed their bill in the circuit court for the county of Muskegon in chancery, against said Allen and said bank, claiming that there was a certain amount due to complainants on said mortgage debt, and praying a foreclosure of the mortgage; and on the same day filed in the office of the register of deeds of the county of Muskegon the usual notice of the pendency of the suit, and that defendants appeared and answered in the suit; and on May 24, 1875, the bank filed its

cross-bill of complaint against the complainants and the said Allen, for the purposes of an adjudication of the amount due to said bank, and for the foreclosure of the mortgage and a sale of the premises for the payment thereof; and that such proceedings were had thereupon that a decree was made dismissing the original bill and granting the prayer of the cross-bill, from which decree an appeal was taken to the Supreme Court, in which court, with a modification it was affirmed; that under said decree the mortgaged premises were sold, and David D. Erwin of Muskegon became purchaser, and received the customary deed. Said Erwin also acquired several tax titles to said premises, and on December 30, 1879, conveyed the premises by warranty deed to the complainants.

The bill then avers that during the pendency of said foreclosure suit, and after notice lis pendens was filed, said Allen conveyed an undivided half of the premises to Alpheus Gustin of Muskegon, who had actual notice of the pendency of the foreclosure suit and was bound by the decree; that on January 22, 1878, Gustin and wife conveyed the undivided half of the premises to Silas Bannister, who also had actual notice of the pendency of the foreclosure suit, and Bannister gave back a mortgage for the payment of six thousand dollars in two, three and four years from date, which mortgage, on March 6, 1880, was assigned by Gustin to his wife Matilda, and on March 8, 1880, Bannister and wife gave a quitclaim deed of said undivided half to Albert H. Stewart of Chicago.

The bill then avers that Erwin immediately after his purchase went into possession of the whole premises as owner; that neither Gustin nor Bannister ever had possession, but that they and said Stewart and Matilda Gustin combined to cloud complainant's title and set up a false pretense that they never had notice, constructive or otherwise, of the pendency of said foreclosure suit, and that said Matilda Gustin has filed her bill for the foreclosure of said Bannister mortgage, making Bannister and his wife and Stewart defendants, but not this complainant, though she well knows complainant is in actual possession; that decree has been made in said last-

mentioned foreclosure suit, and notice of sale has been published.

The bill then prays for an injunction against such sale, and that complainant's title to the premises be quieted as against the unfounded claims of the defendants and each of them. A temporary injunction was issued and the sale stayed.

The defendants Alpheus and Matilda Gustin answered, denying in general terms all the equities of complainant, and especially denying that they or Bannister had notice of the bank foreclosure suit while it was pending.

They allege that before Mrs. Gustin filed her bill to foreclose the Bannister mortgage, Erwin, as owner of the original mortgage from Allen to the Wilcoxes, fully discharged the same of record, and surrendered the accompanying notes to Allen.

That Allen had a good and adequate defense in the foreclosure proceedings commenced by the Wilcoxes and Freer to the note and payment alleged to have been assigned to the bank, and that Allen had in fact paid said note before the cross-bill was filed; and at the time the original bill was filed there was nothing due either to the Wilcoxes or the bank, and therefore no authority to file a notice lis pendens, and nothing was gained by filing it, and no one was bound by any notice in consequence of its being filed.

They allege that Allen was induced to allow the cross-bill of the bank to be taken as confessed by the management of Smith, Nims & Erwin who were his counselors and also the solicitors for the bank; that the note held by the bank was never in the hands of the complainant in said original suit, and constituted no part of the subject-matter of such suit and that the filing of the cross-bill was in effect the commencement of a new and independent suit for the purpose of collecting an indebtedness from T. B. & A. B. Wilcox to the bank, which said note was assigned to said bank to secure; and that the defendants to this suit are entitled to the same rights as to said cross-bill that they would have been under an independent foreclosure.

That the bank did not acquire any new rights by filing their

bill as a cross-bill, and that it could not affect the rights of the defendants without· making them parties to its bill as it should have done.

That when the bank filed its cross-bill, Allen, who was made defendant, was only interested as tenant in common with Alpheus Gustin in the lands, each owning an undivided half; that Allen's interest was sufficient in value to more than pay the claim of the bank, and if sold separately, as it should have been, it would not have been necessary to resort to Gustin's interest in order to satisfy the demand of the bank.

That Smith, Nims & Erwin, Allen's solicitors, without his knowledge entered into a secret agreement with Alexander Rogers, who claimed to be a creditor of Allen's, by which they agreed to purchase the decree obtained by the bank, and that David D. Erwin, one of Allen's solicitors, be appointed trustee to transact all the business relating to such purchase, to take the deed in his own name, and to act as trustee for the parties in the proportion of an undivided half to each; and it was under that secret agreement that Erwin purchased the decree, and gave the deed afterwards to complainant. After this agreement, and after Erwin had acquired an interest by assignment of the mortgage given by Allen to the Wilcoxes, and the notes given therewith, he discharged the mortgage of record as fully paid and satisfied, and executed to Allen a release under seal of all claims and demands.

That after Erwin had conveyed to complainant, the latter, fearing that his title was imperfect, and was of an undivided half only, and that the mortgage held by Mrs. Gustin was a valid lien, filed his bill in equity against Erwin and others, who had received the consideration from complainant on his purchase, praying for an injunction until the court should determine whether said title was defective or until Erwin should make it perfect, and that such suit was settled by Erwin and others giving a bond of indemnity for complainant's protection, which bond, it is claimed, is an ample and sufficient protection to complainant against any defects in the title acquired by him from Erwin, and there was therefore no need for complainant to resort to this suit for the protection of his rights, and

in fact he is·but a nominal complainant, and is bringing this suit for the sole use, benefit, and protection of the firm of Smith, Nims & Erwin.

That whatever interest the bank or its assignee Erwin had under said decree against Allen, has been fully paid and settled by the sale of the property and by the subsequent settlement between Allen and Erwin and the release given by Erwin; and that it was not necessary for the bank or for Erwin, its assignee, to resort to the interests of these defendants in the undivided half of the premises, as tenants in common or under the mortgage.

Other allegations need not be particularly mentioned.    The answer claims the benefit of a demurrer.

The answer was filed May 13, 1882, and complainant replied to it May 20th.   June 30th an order was entered taking the bill as confessed by defendant Stewart, and a like order, August 26th, as to defendant Bannister.   On May 31st an order for the taking of the testimony within sixty days was entered by the solicitors for the Gustins, and notice thereof served on complainant's solicitors, who immediately notified the solicitors for the Gustins that the order in that stage of the suit was premature.    The Gustins nevertheless proceeded to give notice of the examination of witnesses, and examined several, the complainant not appearing.    Immediately after taking the bill as confessed by Bannister complainant gave notice of his election to have the testimony taken in open court, and it was so taken.    On motion of complainant the depositions which had been taken for the Gustins ex-parte were suppressed. .

On the hearing decree was made quieting the title of complainant as prayed, and perpetually enjoining the foreclosure of the Bannister mortgage by Mrs. Gustin.    The Gustins appealed.

I. A question of practice is raised on the order of the court suppressing the depositions taken ex-parte by the defendants. They were suppressed for the reason that when the order for the taking of testimony was entered, the case was at issue

as to a part of the defendants only, the others not having yet been brought in. The action of the court was undoubtedly correct. No party is at liberty to enter an order for the taking of testimony before a commissioner until after the time for claiming an examination in open court has passed (Rule 47 of Chancery Rules), and that right could not be claimed until the cause was at issue as to all the defendants, or until those who had not answered had been defaulted. *Vermillya v. Odell* 1 Edw. Ch. 617: 4 Paige 121; *Hastings v. Palmer* 1 Clarke Ch. 52. If the depositions could be considered rightfully taken at the time, the subsequent claim, as matter of statutory right, to have the testimony taken in open court, would necessarily preclude their use, and have the effect practically to set them aside.

II. But if the suppressed depositions were to be considered in the case, we are unable to discover that these defendants would be benefited thereby. The purpose in taking them was to establish the allegation that Smith, Nims & Erwin did not deal fairly with Allen, but that, for purposes of their own, they advised him not to make defense to the foreclosure suit of the bank, though he had a defense which would have been effectual, and that when Erwin took an assignment of the decree obtained by the bank and had sale made under it, he did so as trustee for Allen, but afterwards refused to recognize Allen's equities. Allen's deposition is the one by which the fraud is supposed to be made out, but it clearly appears from his own statement that he is in no position to set up a claim of fraud against these parties, for with full knowledge of all the facts, and after they had distinctly refused to recognize the equities claimed by him, he gave them a full release. He pretends duress. "I did this," he says, "because I was forced to do it. There was quite a large amount of personal property on the premises that belonged to me which they even then"—after they had made sale of the real estate in spite of his protest—"refused to release, it being under their control and out of my reach; and having no other means I was forced to execute these papers in order to get this personal property to help myself with." But his evidence shows that there had

been a controversy lasting for some time, and that any detention of property from him was under a claim of ownership and in denial of his right. The duress therefore consisted in asserting and insisting upon a claim adverse to his, which he by his release acceded to for such consideration as he then saw fit to accept; and this in a legal sense was no duress at all. Cases of duress of goods, under the stress of which a party submitted to exactions which were held illegal, are cited in *Hackley v. Headley* 45 Mich. 569, 574, but none of them would sustain the claim made here. And the vague statement which Allen makes of his rights does not impress one that their basis was either clear or certain.

But a conclusive answer to this part of the case is that Allen makes no attempt to set aside and vacate the arrangement which he claims was fraudulent and forced upon him. It is not in any suit to which he is a party that he complains of duress; but while he complains he acquiesces, and the complaint has therefore no legal significance whatever. A fraudulent settlement is not void; it is only voidable; and that not by a stranger to it, but by the party himself. And duress such as is here set up is only a species of fraud; and a complaint that rests in fault-finding merely, and is not made to the legal tribunals, does not in any manner affect the legal validity of the transaction supposed to be tainted by the fraud, but leaves it in full force.

The claim of defendants appears to be that if Allen had not been defrauded he would have defended the suit brought by the bank, and his defense would have been effectual to prevent a decree in the bank's favor, and would have protected their rights. They were therefore indirectly and incidentally injured by the fraud practised upon Allen, and for that reason have a right to complain of it. But the general rule is that a wrong to one person, though it may be incidentally injurious to another, gives no right to legal redress in favor of the latter unless it was a wrong to him also; and in this case inducing Allen to make no defense could have been no wrong to these defendants, unless two things combined, namely: *first*, that a defense in their

interest was necessary ; and *second*, that it was the duty of Allen to make it for them.   And this brings us to a consideration of the notice lis pendens, and of its effect upon the rights of these defendants.

III.   The foreclosure suit brought by Theo. B. Wilcox and others against Allen and the Lumberman's Bank was begun April 14, 1874.   The defendants in that suit demurred to the bill, and the demurrers were overruled March 6, 1875. Before other proceedings in the case, and on April 13, 1875, Allen deeded an undivided half of the premises to Alpheus Gustin.   On May 24, 1875, the defendants filed their answers, and on the same day the bank filed its cross-bill. The notice lis pendens was filed when the original suit was begun, and none was filed on beginning the cross-suit.   The claim of the defense is that the cross-suit was only such nominally ; that in fact it was an original suit, and the notice of lis pendens which was on file was not therefore constructive notice of it.   The reason assigned for this claim is that the so-called cross-bill introduced other and distinct matters into the case.   The only question it presented was the amount of the indebtedness of T. B. & A. B. Wilcox to the bank; and this was entirely foreign to the mortgage given by Allen to the Wilcoxes.   But this could not be true after one payment of the mortgage had been assigned to the bank as security for its demand.   The mortgage and that demand were thereby associated in such a manner that the foreclosure of the mortgage necessarily affected the security of the bank ; the bank was a necessary party defendant, and was obliged to put in a defense for its own protection.   Had it done so without at the same time asking a foreclosure of the mortgage for the satisfaction of its own demand, it would simply have defeated the suit, leaving its own claim to be enforced afterwards.   If it had adopted that course, it would have defeated the Wilcox suit by virtue of its interest in the mortgage which it had as creditor of Allen ; and it is very plain, therefore, that the indebtedness of Allen to the bank was not foreign to the mortgage.

But the bank chose not merely to defeat the Wilcox suit,

but to insist upon a foreclosure on its own behalf; and for this purpose it was necessary to file a cross-bill. This was a further and entirely admissible measure of defense; and any one chargeable with notice of the suit was chargeable with notice of the cross-suit also. The cross-suit was inseparable from the original; both together constituted one cause. *Kemp v. Mackrell* 3 Atk. 812; *Field v. Schieffelin* 7 Johns. Ch. 250; *Cartwright v. Clark* 4 Met. 104, 109. The fact that affirmative relief was asked by the defendant, by the pleading by which in part he made his defense, was unimportant to this question; notice of the suit was notice of all which properly belonged to it.

The notice lis pendens was therefore constructive notice to all the defendants, and charged them with the duty of looking after their interests in the case. The bank or its solicitors were under no obligation to look after them; and though Allen might have defended in the interest of the defendants, it does not appear that he had taken upon himself any legal obligation to do so; or if he had, that the bank or its solicitors were aware of the fact. If his deed to Gustin contained proper covenants of warranty or against incumbrances, he may have become liable upon them by his failure to defend; but a covenant against incumbrances is not a covenant to defend a suit upon an incumbrance, and might or might not, according to the circumstances, charge the covenantor with a moral duty to make such a defense. But a moral duty and a legal duty would not necessarily be coincident.

IV. Defendants insist that the one undivided half of the premises was sufficient to satisfy the mortgage without resort to their half, and that it was the duty of the bank to make sale of Allen's half first. Possibly if the defendants had looked after their interest in the cross-suit, they might have obtained a decree to that effect; but they failed to do so, and the decree which was entered warranted the sale made.

Defendants also claim that Erwin, in his purchase of the decree from the bank, and in his dealings with the property afterwards, was guilty of a fraud upon the bank, toward

which he stood in confidential relations. If he was, the fact concerns the bank, but not these defendants.

The tax deeds, in the view we take of the case, are unimportant. No error is found in the decree, and it must be

Affirmed.

CAMPBELL and SHERWOOD, JJ. concurred, CHAMPLIN, J. not sitting.