J F CAVANAUGH & COMPANY v CITY OF DETROIT

Docket Nos. 56639, 56688. Submitted November 4, 1982, at Detroit.—
Decided June 22, 1983.

    J. F. Cavanaugh & Company and others in the construction and
related industries filed suit against the City of Detroit, its
Human Rights Commission, and the individual members
thereof in Wayne Circuit Court seeking a declaratory judgment
that the City of Detroit Omnibus Human Rights Ordinance was
pre-empted by the Michigan Constitution and the Elliott-Larsen
Civil Rights Act. Hispanos Organized to Promote Entrepre-
neurs, Inc., and other representatives of minority contractors
and laborers intervened in the action as defendants. Amicus
curiae briefs in support of plaintiffs' motion for summary
judgment were filed by the Michigan Manufacturers Associa-
tion and the Greater Detroit Chamber of Commerce. The
ordinance at issue sets forth various definitions of unlawful
discrimination as it applies to public service facilities, public
benefit recipients, age, sex, senior citizen housing, handicapped
persons, cohabitants, and insurance and credit redlining. Plain-
tiffs argued that the adoption of the ordinance represented an
impermissible intrusion into an area that was pre-empted by
the state and that if the ordinance was permitted to stand
plaintiffs, both as actual and prospective contractors with the
City of Detroit under the ordinance, would be subjected to the
competing and conflicting claims that inevitably result when

REFERENCES FOR POINTS IN HEADNOTES

[1] 22 Am Jur 2d, Declaratory Judgments § 10.
    Supreme Court's view as to what is a "case or controversy" within
the meaning of Article III of the Federal Constitution or an
"actual controversy" within the meaning of the Declaratory
Judgment Act (28 USCS § 2201). 40 L Ed 2d 783.
[2] 22 Am Jur 2d, Declaratory Judgments § 11.
[3] 16 Am Jur 2d, Constitutional Law §§ 289, 291.
    73 Am Jur 2d, Statutes § 370
[4, 5] 15 Am Jur 2d, Civil Rights § 102.
[5] 15 Am Jur 2d, Civil Rights § 95.
[6] 17 Am Jur 2d, Contracts § 257.
    56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
cal Subdivisions § 501.

two regulatory agencies seek jurisdiction in the same area. The court, Harry J. Dingeman, Jr., J., granted plaintiffs' motion for summary judgment and entered a declaratory judgment that the ordinance was null and void based on its determination that municipalities are pre-empted from enacting ordinances protecting civil rights. Defendants and intervening defendants filed separate appeals, which have been consolidated. *Held:*

1. Only the contracting provisions of the ordinance are at issue in this case. To the extent that the trial court considered other provisions, it erred, and the judgment affecting provisions of the ordinance other than the contracting provisions is vacated.

2. The pre-emption question is limited on appeal to the regulation of municipal contractors in the field of civil rights. No actual controversy exists to support a challenge by plaintiffs to the validity of the remaining provisions of the ordinance. If plaintiffs wish to challenge other portions of the ordinance, they must present facts to the trial court showing that an actual controversy exists.

3. The trial court erred in finding that the ordinance is null and void on the ground that state law expressly provides that the state's authority to regulate in the area of civil rights is exclusive. The court's holding was based on implication, not on express provision. No express provision for pre-emption of the field appears in the Elliott-Larsen Civil Rights Act.

4. The trial court erred in finding that the legislative history of the Elliott-Larsen Civil Rights Act demonstrates the intent to pre-empt the field of civil rights. Under the circumstances of this case, a clearer expression of the intent to deprive municipalities of powers they had previously exercised is required to overcome the presumption of the ordinance's validity. The legislative history of enactments in the field of civil rights does not support a holding of pre-emption.

5. The trial court erred in holding that the pervasive nature of the regulatory scheme imposed by the Elliott-Larsen act supported a finding of pre-emption. The Elliott-Larsen act does not create a pervasive scheme of regulation of civil rights.

6. Municipalities are not pre-empted from enacting laws in the field of civil rights. However, municipalities are precluded from requiring the adoption of plans approved only by the municipality. Compliance with a city-approved affirmative action plan will not insulate an employer from charges that it violated the state's nondiscrimination law. The judgment declaring the provision of the ordinance which requires all city

contractors to take affirmative action to achieve reasonable representation of minority groups and women on their work force to be invalid is affirmed because the provision implicitly conflicts with state law which requires employers not to discriminate on the basis of religion, race, color, national origin, or sex.

7. The section of the ordinance which requires city contracts to include a covenant to comply with affirmative action provisions is also invalid.

8. The section of the ordinance which requires a nondiscrimination covenant in all city contracts and makes breach of the covenant a material breach of contract is valid. Such covenants are required by the Elliott-Larsen Civil Rights Act.

9. The section of the ordinance which requires city contracts to include the contractor's covenant to furnish the city with information on compliance with the sections already discussed is valid only insofar as it pertains to the section requiring nondiscrimination covenants.

10. The validity of the sections of the ordinance concerning liquidated damages for breach of the covenants required in the other provisions and remedies available to the city upon a breach of the same covenants was never addressed by the trial court. The trial court must decide these issues in the first instance.

11. The validity of the section of the ordinance which requires the city's Human Rights Department to review and determine compliance by a prospective contractor with the other contracting provisions of the ordinance before the award of a contract is made should not be decided in this case since this section is an internal requirement not directly or indirectly affecting plaintiffs.

12. The section of the ordinance providing for enforcement provisions is valid with the exception of the subsection which gives the city's Department of Human Rights the power to order guidelines or programs providing a remedy to correct the effect of past discrimination where appropriate. This subsection is invalid for the same reasons as the affirmative action provisions previously held invalid.

Affirmed in part, reversed in part, and remanded.

1. DECLARATORY JUDGMENTS — ACTUAL CONTROVERSY — WORDS AND PHRASES.

An "actual controversy", which is a condition precedent to invocation of declaratory relief under the general court rules, exists where a declaratory judgment is necessary to guide the plain-

tiff's future conduct in order to preserve his legal rights (GCR 1963, 521.1).

2. DECLARATORY JUDGMENTS — ACTUAL CONTROVERSY — ADVERSE INTEREST.

A court is not precluded by the "actual controversy" requirement of the court rule governing declaratory judgments from reaching issues before injuries or losses have occurred; however, the plaintiff must, at a minimum, allege and prove facts which show an adverse enough interest to show an actual, justiciable controversy (GCR 1963, 521.1).

3. MUNICIPAL CORPORATIONS — ORDINANCES — STATUTES — CONSTITUTIONAL LAW — PRE-EMPTION.

The determination that the state has pre-empted a field of regulation which a city seeks to enter with an ordinance is made according to certain guidelines: (1) where state law expressly provides that the state's authority to regulate is to be exclusive, there is pre-emption; (2) pre-emption may be implied upon an examination of legislative history; (3) pervasiveness of the state regulatory scheme is a factor which should be considered as evidence of pre-emption; (4) the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.

4. CIVIL RIGHTS — ELLIOTT-LARSEN CIVIL RIGHTS ACT.

The Elliott-Larsen Civil Rights Act does not create a pervasive scheme of regulation of civil rights; no single comprehensive scheme of legislation to protect civil rights was intended by the Legislature when it passed the Elliott-Larsen act (MCL 37.2101 et seq.; MSA 3.548[101] et seq.).

5. CIVIL RIGHTS — MUNICIPALITIES — ORDINANCES — AFFIRMATIVE ACTION PLANS — PRE-EMPTION.

Municipalities are not pre-empted by the Elliott-Larsen Civil Rights Act from enacting laws in the field of civil rights; however, municipalities are precluded from requiring the adoption and use of plans approved only by the municipality; compliance with a city-approved affirmative action plan will not insulate an employer from charges that he violated the state's nondiscrimination law (MCL 37.2101 et seq.; MSA 3.548[101] et seq.).

6. CIVIL RIGHTS — CONTRACTS — MUNICIPALITIES — NONDISCRIMINATION COVENANTS — BREACH.

Nondiscrimination covenants are required by the Elliott-Larsen Civil Rights Act to be in all city contracts and breach of the

covenants is made a material breach of the contract (MCL 37.2209; MSA 3.548[209]).

*Butzel, Long, Gust, Klein & Van Zile* (by *Robert J. Battista* and *Gregory S. Muzingo*), for plaintiffs.

*Bodman, Longley & Dahling* (by *Joseph N. Brown* and *David W. Hipp*), for defendants.

Before: BRONSON, P.J., and V. J. BRENNAN and J. H. GILLIS, JJ.

PER CURIAM. Defendants appeal as of right a declaratory judgment that the Detroit Omnibus Human Rights Ordinance, which took effect on March 24, 1979, is null and void. The decision of the circuit court was based on its determination that municipalities are pre-empted from enacting ordinances protecting civil rights.

Plaintiff Cavanaugh is a construction contractor which seeks to do business with the City of Detroit. The other plaintiffs are voluntary associations whose members likewise seek to do business with the city. The defendants are the city, its Human Rights Commission and Department, and the individual members of the commission.

On appeal, defendants first argue that the trial court erred by finding that it had jurisdiction to make a declaratory judgment in this case. If it had jurisdiction, defendants argue, it abused its discretion by exercising it. Plaintiffs respond by claiming that, since they are parties seeking to contract with the city, a real controversy existed concerning the ordinance's requirements of nondiscrimination and affirmative action plans for contractors with the city.

We agree with the trial court that plaintiffs need not show the loss, for noncompliance, of a

contract opportunity before challenging the regulations the city seeks to impose on contractors. We also agree that plaintiffs should not be forced to violate the ordinance at their risk before challenging its validity.

At the same time, it is abundantly clear that the controversy in this case is over only those provisions of the ordinance governing the conduct of those who contract with the city. Absent a showing of a party's standing, jurisdiction to make a declaratory judgment is absent. See *Shavers v Attorney General*, 402 Mich 554, 588-592; 267 NW2d 72 (1978), *cert den* 442 US 934; 99 S Ct 2869; 61 L Ed 2d 303 (1979). An "actual controversy" exists, under GCR 1963, 521.1, only when a judgment is necessary to guide a plaintiff's future conduct. To support the finding of an "actual controversy", it is essential that plaintiffs plead and prove facts which indicate an adverse interest. *Shavers, supra,* p 589. By deciding issues absent an actual controversy, this Court could impede the progress of future litigants who may be involved in a real factual controversy. *Stockler v Treasury Dep't,* 75 Mich App 640, 645; 255 NW2d 718 (1977), *app dis* 435 US 963; 98 S Ct 1598; 56 L Ed 2d 54 (1978).

The failure of the parties to narrow the issues at trial has forced this Court to scrutinize carefully the entire ordinance in light of plaintiffs' pleadings. Plaintiffs alleged facts supporting their standing with respect only to the contracting provisions (2-7-3.1) of the ordinance. To the extent that the trial judge considered other provisions, he erred. To the extent that his judgment affects provisions of the ordinance other than 2-7-3.1, it is vacated.

We will limit our consideration of the pre-emption question to the regulation of municipal con-

tractors in the field of civil rights. Section 2-7-3.1 of the ordinance in question requires all contractors doing business with the city to take affirmative action to achieve reasonable representation in their work force of minorities and women, 2-7-3.1(A). Each contract with the city, and each subcontract with a city contractor, is required to contain an affirmative action covenant, breaches of which are made material breaches of contract, 2-7-3.1(A), (B). Each contract with the city is required to contain a nondiscrimination covenant, a breach of which is also made a material breach of contract, 2-7-3.1(C). An exception is made for discrimination based on bona fide occupational qualifications, 2-7-3.1(C). Each city contract is required to include a covenant to furnish requested information concerning the contractor's obligations not to discriminate and to take affirmative action, and a breach of this covenant is made a material breach of contract, 2-7-3.1(D). Each city contract is required to contain a clause negotiated between the parties providing for liquidated damages for the contractor's noncompliance with the ordinance, 2-7-3.1(E). Section 2-7-3.1(F) gives the city the right, at its option, to cancel or suspend a contract, recover liquidated damages, or seek other relief upon a contractor's noncompliance with the equal employment opportunity or affirmative action provisions of the contract in question. Section 2-7-3.1(H) makes the following provisions for enforcement:

"The Human Rights Department shall have power in accordance with Article 7, Section 7-1004 of the City Charter:
"(1) To cooperate with and with their consent, utilize regional, state, local and other agencies, both public

and private, and individuals in the application and enforcement of this ordinance.

"(2) To order guidelines or programs providing a remedy to correct the effect of past discrimination where appropriate in accordance with this ordinance.

"(3) Appeals by persons or firms aggrieved by decisions of ineligibility to do business with the city may be heard by the city council or such other appellate body as may be provided by ordinance under Section 9-302 of the charter."

If plaintiffs wish to challenge other portions of the ordinance, they must present facts to the trial court showing that an actual controversy exists.

Our Supreme Court has provided the following guidelines for determining if municipal regulation is pre-empted in a specified area:

"First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted. *Noey v Saginaw,* 271 Mich 595; 261 NW 88 (1935).

"Second, pre-emption of a field of regulation may be implied upon an examination of legislative history. *Walsh v River Rouge,* 385 Mich 623; 189 NW2d 318 (1971).

"Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. *Grand Haven v Grocer's Cooperative Dairy Co,* 330 Mich 694, 702; 48 NW2d 362 (1951); *In re Lane,* 58 Cal 2d 99; 22 Cal Rptr 857; 372 P2d 897 (1962); *Montgomery County Council v Montgomery Ass'n, Inc,* 274 Md 52; 325 A2d 112, 333 A2d 596 (1975). While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.

"Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." (Footnotes omitted.) *People v Llewellyn,* 401

Mich 314, 323-324; 257 NW2d 902 (1977), *cert den* 435 US 1008; 98 S Ct 1879; 56 L Ed 2d 390 (1978).

The trial judge held that the ordinance was pre-empted on all four grounds. He cited several different provisions of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* and found that these provisions, read in light of the absence of an explicit grant of power to cities to legislate in this field, showed an "express intent" to pre-empt the field. Legislative intent is seldom "express"; it is generally implied from the language of a statute. "Expressly" means in an express manner, in direct or unmistakable terms, explicitly, definitely, directly. *San Francisco v Western Air Lines, Inc,* 204 Cal App 2d 105; 22 Cal Rptr 216, 225 (1962). In the *Llewellyn* Court's example of this prong of the pre-emption doctrine, *Noey v Saginaw,* 271 Mich 595; 261 NW 88 (1935), language conferring on the liquor control commission "complete control" of, and the "sole right, power and duty to control", the alcoholic beverage trade was held to pre-empt local regulation of the hours of sale. The trial judge erred because his holding was based on implication, not on express provision. No express provision for pre-emption of the field appears in the Elliott-Larsen act.

The trial judge also found that the legislative history of the Elliott-Larsen act demonstrates the intent to pre-empt the field. In the case cited by the Supreme Court in the passage from *Llewellyn* relied on by the trial court, the history supporting pre-emption presented a very clear indication of legislative intent, which was bolstered by the language of the statute and the nature of the subject matter. See *Walsh v River Rouge,* 385 Mich 623; 189 NW2d 318 (1971). In the present case, the Legislature's failure to enact proposed substitute

bills expressly granting localities the right to adopt ordinances protecting civil rights is not a good indicator of legislative intent. The statutory history, even if viewed in a light most favorable to plaintiffs, is ambiguous. The history surrounding the act indicates only that the Legislature did not intend by its adoption to grant new powers to localities to act in the field of civil rights. Defendants have pointed to numerous instances of municipal enactments to protect civil rights made before the adoption of the Elliott-Larsen act. Under the circumstances, a clearer expression of the intent to deprive municipalities of powers they had previously exercised is required to overcome the presumption of the ordinance's validity. We conclude that the legislative history of enactments in the field of civil rights does not support a holding of pre-emption.

In holding that the pervasive nature of the regulatory scheme imposed by the Elliott-Larsen act supported a finding of pre-emption, the trial court erred. The Elliott-Larsen act does not create a pervasive scheme of regulation of civil rights. See *Llewellyn, supra,* pp 323-324. The coexistence of federal and state statutes protecting civil rights strongly indicates that no single comprehensive scheme of legislation to protect civil rights was intended by the Legislature.

The trial judge also held that the nature of the subject matter is such that uniform statewide regulation is required. If this holding is correct, the nature of the subject matter is almost certainly such that uniform nationwide, not just statewide, policy is required. Civil rights laws simply do not treat a unitary subject, but instead treat one aspect of many important areas of public life *(e.g.,* employment, housing, public accommoda-

tions). We conclude that municipalities are not pre-empted from enacting laws in the field of civil rights.

In addition to holding that the entire field of civil rights legislation is pre-empted by the state, the trial judge found that specific provisions of the ordinance were invalid because of explicit or implicit conflicts with provisions of the Elliott-Larsen act. Section 2-7-3.1(A) requires all city contractors to "take affirmative action to achieve reasonable representation of minority groups and women, on their work force". This requirement implicitly conflicts with state law which requires employers not to discriminate on the basis of religion, race, color, national origin, or sex. MCL 37.2202; MSA 3.548(202). MCL 37.2210; MSA 3.548(210) states:

"A person subject to this article may adopt and carry out a plan to eliminate present effects of past discriminatory practices or assure equal opportunity with respect to religion, race, color, national origin, or sex if the plan is filed with the commission under rules of the commission and the commission approves the plan."

In view of the statute's prohibition of discrimination, § 210 implicitly precludes the use of an affirmative action plan unless the plan is "filed with the [civil rights] commission under rules of the commission and the commission approves the plan". The nature of the interaction between non-discrimination laws and affirmative action plans is such that we are convinced that the Legislature intended to preclude municipalities from requiring the adoption and use of plans approved only by the municipality.[1] We also agree with plaintiffs'

---

[1] But see the opinion in *Baker v Detroit*, 483 F Supp 930, 994-995 (ED Mich, 1979), holding that the Elliott-Larsen act could not be used to bar affirmative action where the duty to act arises under the United States Constitution.

contention that compliance with a city-approved affirmative action plan will not insulate an employer from charges that it violated the state's nondiscrimination law. We affirm the judgment declaring § 2-7-3.1(A) to be invalid. Section 2-7-3.1(B) requires city contracts to include a covenant to comply with § 2-7-3.1(A). It is also invalid. Section 2-7-3.1(C) prohibits discrimination by city contractors. It clearly does not conflict with the provisions of the Elliott-Larsen act prohibiting the same conduct. The same section requires a nondiscrimination covenant in all city contracts and makes breach of the covenant a material breach of contract. Such covenants are required, and their breach is made a material one, by § 209 of the Elliott-Larsen act. MCL 37.2209; MSA 3.548(209). Section 2-7-3.1(C) is valid.

Section 2-7-3.1(D) requires city contracts to include the contractor's covenant to furnish the city with information on compliance with § 2-7-3.1(A), (B), and (C). If subsections (A) and (B) are invalid, this provision can fairly be interpreted as referring only to subsection (C). Interpreted as such, it is valid.

Section 2-7-3.1(E) concerns liquidated damages for breach of the covenants required in the other provisions we have discussed. Section 2-7-3.1(F) concerns the remedies available to the city upon a breach of the same covenants. Their validity was never addressed by the trial court, which must decide these issues in the first instance.

Section 2-7-3.1(G) requires the city's Human Rights Department to review and determine compliance by a prospective contractor with § 2-7-3 of the ordinance before the award of a contract is made. Section 2-7-3 generally requires nondiscrimination by employers and is fully consistent with

state law. Secondly, this is an internal requirement not directly or indirectly affecting plaintiffs. Its validity should not be decided in the present case.

Finally, § 2-7-3.1(H) provides for enforcement provisions. Subsection (1) provides for cooperation with private and public agencies in the application and enforcement of § 2-7-3.1. It is unobjectionable. Subsection (2) gives the city's Department of Human Rights the power to "order guidelines or programs providing a remedy to correct the effect of past discrimination where appropriate". This provision is invalid for the reasons we have stated in our discussion of affirmative action plans not approved by the state civil rights commission. Section 2-7-3.1(H)(3) provides an appeal procedure for a contractor found ineligible to do business with the city. Plaintiffs have suggested, and we have found, no reason for holding it to be invalid.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. No costs. We do not retain jurisdiction.