HEALTH CENTRAL v COMMISSIONER OF INSURANCE

Docket No. 82158. Submitted December 9, 1985, at Lansing. Decided June 3, 1986.

The Commissioner of Insurance issued an order requiring health maintenance organizations to file with the Michigan Insurance Bureau an annual report supplemental schedule containing salary information on individual HMO employees. Health Central and several other HMOs filed suit against the Commissioner of Insurance in Ingham Circuit Court seeking declaratory and injunctive relief, alleging that each plaintiff was an HMO subject to the order, that the order was without statutory authority or, if it did have statutory authority, the information should be kept confidential under the Freedom of Information Act as an unwarranted invasion of individual privacy, and that public disclosure of the information made it difficult for HMOs to obtain qualified administrative and medical personnel. The court, James R. Giddings, J., granted plaintiffs' motion for summary judgment, holding that the commissioner could continue to require HMOs to provide salary information, but that the information was to be kept from public disclosure. The court subsequently entered an order permitting the commissioner to disclose aggregate salary information to the public. The commissioner appealed. Held:

1. The FOIA did not create any right to prevent disclosure of information, therefore any asserted right by third parties to prohibit disclosure must have a basis independent of the FOIA. Plaintiffs failed to recognize and allege an independent common-law basis for their claim that employee salary information cannot be disclosed by the commissioner, although the trial

REFERENCES

Am Jur 2d, Declaratory Judgments §§ 1, 31, 32, 75.

Am Jur 2d, Parties §§ 26-30.

Am Jur 2d, Privacy §§ 11, 12.

Am Jur 2d, Records and Recording Laws §§ 32, 43, 44.

Scope of judicial review under Freedom of Information Act (5 USCS § 552(a)(3)), of administrative agency's withholding of records. 7 ALR Fed 876.

See also the annotations in the ALR3d/4th Quick Index under Freedom of Information Acts; Privacy.

court rendered judgment based upon the common-law right. Defendant has entered no objection to this procedure, and it will be considered as harmless error since plaintiffs could have easily corrected the defective pleading by amendment.

2. The circuit court was without subject-matter jurisdiction to determine the question before it because plaintiffs lacked standing to assert their employees' rights of privacy. The plaintiff HMOs failed to allege injuries that are more than merely conjectural, and the line of causation between the commissioner's disclosure of individual HMO employee salaries and the alleged severe chilling effect on the operations of the HMOs is not readily apparent on the record presented. The HMOs raise only the putative right of privacy of their employees and fail to show the existence of any injury to themselves of sufficient immediacy and ripeness to warrant judicial intervention.

Reversed and remanded for further proceedings.

1. PRIVACY — FREEDOM OF INFORMATION ACT — PUBLIC RECORDS — NONDISCLOSURE.

The Freedom of Information Act requires disclosure of all public records and only authorizes nondisclosure at a government agency's discretion under certain exceptions; the act did not create any right to prevent disclosure, and any asserted right by third parties to prohibit disclosure must have a basis independent of the act (MCL 15.231 et seq.; MSA 4.1801[1] et seq.).

2. PRIVACY — FREEDOM OF INFORMATION ACT — DECLARATORY RULINGS — APPEAL.

A plaintiff seeking to prevent disclosure of information under the Freedom of Information Act may obtain judicial review of a governmental agency's decision to disclose information only after an agency declaratory ruling has been properly requested (MCL 24.263, 24.264, 24.301; MSA 3.560[163], 3.560[164], 3.560[201]).

3. PRIVACY — INVASION OF PRIVACY — PERSONAL RIGHT.

The right of privacy is a personal right and ordinarily cannot be asserted by anyone other than the person whose privacy has been invaded.

4. PRIVACY — RIGHT OF PRIVACY — CORPORATIONS.

The right of privacy is primarily designed to protect the feelings and sensibilities of human beings and does not protect artificial entities; corporations do not enjoy a right to privacy.

5. ACTIONS — DECLARATORY JUDGMENTS — SUBJECT-MATTER JURISDICTION.

A suit for declaratory judgment is a judicial procedure whereby a

court renders an opinion on a question of law; a court may not decide hypothetical issues and, where no case of actual controversy exists, the circuit court lacks subject-matter jurisdiction to enter a declaratory judgment.

6. ACTIONS — STANDING — LEGAL INTERESTS.

A party must show a direct effect to his legal interest to have standing to sue.

7. ACTIONS — STANDING — INCIDENTAL INJURIES.

A wrong to one gives no right of action to another whom it incidentally injures, and the one who is incidentally injured cannot sue on behalf of those whose rights they assert.

*Downs & Zagaroli, P.C.* (by *Michael A. Zagaroli*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *E. John Blanchard,* Assistant Attorneys General, for defendant.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and HOOD, JJ.

PER CURIAM. Defendant Commissioner of Insurance appeals as of right from circuit court orders directing disclosure of plaintiffs Health Maintenance Organizations' employees' salaries only in the aggregate and denying the commissioner's motion for reconsideration and reversal of summary judgment on behalf of plaintiffs. The trial court's decision prohibits defendant from disclosing individual salary information under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* The HMOs sued for declaratory and injunctive relief alleging that each plaintiff was an HMO subject to an order of the commissioner requiring HMOs to file with the Michigan Insurance Bureau an annual report supplemental schedule containing salary information on individ-

ual HMO employees. The complaint alleged tht the commissioner's order was without statutory authority or, if it did have statutory authority, the information should be kept confidential under the FOIA as an unwarranted invasion of individual privacy. The complaint further alleged that public disclosure of the information made it difficult for HMOs to obtain qualified administrative and medical personnel.

An ex parte temporary order was issued enjoining the commissioner from requiring the filing of the salary information and from releasing such information to the public. A show-cause hearing on the temporary restraining order was held, at which time Health Central abandoned its claim that the commissioner could not obtain the salary information. Ingham Circuit Judge James T. Kallman ruled that the temporary restraining order would remain in effect and issued a written opinion and order in which he found that:

> [M]aking this information available to the public is an invasion of privacy. This Court is satisfied that this serves no public purpose. There is no harm to the public since the actual salaries, benefits, etc., are scrutinized by the Insurance Commissioner. Any improper handling or misuse of funds can be corrected by the appropriate action of the Insurance Commissioner.
>
> This Court has weighed the potential benefit and potential harm and finds that public disclosure of this information could cause a problem in recruiting qualified staff. It is in the public interest for HMOs to have the finest medical staff available. Medical doctors have ample opportunities to make good salaries and working for an HMO should not expose them to possible harrassment [sic]. This Court is satisfied that the public is protected by the Insurance Commissioner [sic] having this detailed information.

Judge Kallman then ordered that the commissioner could continue to require HMOs to provide salary information, but that the information was to be kept from public disclosure.

The case was subsequently reassigned to Judge James R. Giddings, who granted plaintiffs' subsequent summary judgment motion for the reasons which Judge Kallman had set forth in his opinion. When the commissioner moved for reconsideration, Judge Giddings heard arguments and denied the motion. He discounted the commissioner's argument that Health Central had failed to allege an independent right of privacy outside of the FOIA as required by Supreme Court interpretations in reverse FOIA litigation. Instead, Judge Giddings assumed that the proper allegation existed rather than having Health Central amend its complaint and then rehear the matter. He then found a common-law right of privacy in the HMO employees' salaries and affirmed his judgment.

On October 24, 1984, the parties appeared before Judge Giddings with a proposal that the commissioner be allowed to disclose aggregate salary information to the public. Judge Giddings concluded that the aggregate information (containing no names of individual administrative employees) would serve the public interest of containing health care costs without undue infringement upon employees' privacy, and he granted an order in conformity with the proposal.

The commissioner now seeks reversal of Judge Giddings' orders and asks this Court to hold that the salary information of individual HMO employees constitutes a public record available for public inspection.

This is a "reverse FOIA" case, where the plaintiff seeks to prevent disclosure, rather than compel disclosure, of information contained in a govern-

ment agency file. The FOIA requires disclosure of all public records and only authorizes nondisclosure, at the agency's discretion, under certain enumerated exceptions. Thus, the FOIA did not create any right to prevent disclosure, and "[a]ny asserted right by third parties to prohibit disclosure must have a basis independent of the FOIA." *Tobin v Civil Service Comm,* 416 Mich 661, 668-669; 331 NW2d 184 (1982). "In effect, a reverse FOIA suit to prevent disclosure of information within an FOIA exemption must be evaluated as if the FOIA did not exist." 416 Mich 670.

In their complaint, the plaintiffs failed to recognize and allege an independent common-law basis for their claim that employee salary information cannot be disclosed by the commissioner. Instead, plaintiffs relied upon § 13(1)(a) of the FOIA. However, Judge Giddings judicially "inserted" into plaintiffs' complaint an allegation of the common-law right of privacy and rendered judgment based upon the common-law right. The procedure, though curious, apparently did not offend the defendant who did not challenge the procedure either below or on appeal. Since, as the trial court observed, the plaintiffs could have easily corrected the defective pleading by amendment (GCR 1963, 118, now MCR 2.118), we consider the judgment on an unpled theory to be harmless error.

More troubling, however, is the plaintiffs' apparent failure, prior to commencing suit in the circuit court, to seek and obtain a declaratory ruling from the commissioner under provisions of the Administrative Procedures Act (APA) MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* MCL 24.263; MSA 3.560(163) provides in relevant part:

On request of an interested person, an agency may issue a declaratory ruling as to the applicabil-

ity to an actual state of facts of a statute administered by the agency or of a rule or order of the agency. . . . A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case.

MCL 24.264; MSA 3.560(164) further provides:

Unless an exclusive procedure or remedy is provided by a statute governing the agency, the validity or applicability of a rule may be determined in an action for declaratory judgment when the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The action shall be filed in the circuit court of the county where the plaintiff resides or has his principal place of business in this state or in the circuit court for Ingham county. The agency shall be made a party to the action. *An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously.* This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted. [Emphasis added.]

Finally, MCL 24.301; MSA 3.560(201) provides for judicial review, only after all administrative remedies available within an agency have been exhausted, unless the court determines that immediate review of a preliminary, procedural or intermediate agency action or ruling is required to provide an adequate remedy.

Thus, under these provisions, a plaintiff seeking to prevent FOIA disclosure may obtain judicial review of an agency's decision to disclose informa-

tion, but only after an agency declaratory ruling has been properly requested. Following the procedural rules is imperative to later obtaining judicial review:

Declaratory rulings under § 63 of the APA serve two distinct purposes. They allow a party to obtain a binding determination of rights from an agency in the nature of a declaratory judgment. This creates greater flexibility for the agency and for those dealing with it. 1 Cooper, State Administrative Law (1965), p 240. The section also allows judicial review of such a declaratory determination. This provides an unparalleled opportunity for judicial review of an agency action without the need to exhaust other administrative remedies. Lebenbom, *Sections 63 & 64: Declaratory Rulings,* 58 MSBJ 398 (1979). A refusal to issue a declaratory ruling upon a proper request is also subject to judicial review. *Human Rights Party v Michigan Corrections Comm,* 76 Mich App 204; 256 NW2d 439 (1977).

Neither purpose served by § 63 of the APA would be promoted by allowing the petitioner to circumvent the procedures for obtaining a declaratory ruling. The formality imposed by the department's rules for declaratory rulings, when followed, ensures that the department will treat requests for binding rulings with adequate care and deliberation.

Circumventing the rules promulgated for declaratory rulings also hinders effective judicial review. Declaratory rulings are subject to judicial review in the same manner as agency final decisions or orders in contested cases. MCL 24.263; MSA 3.560(163). Judicial review of a final agency determination under the APA is limited to the record; the final decisions of an agency must include findings of fact and conclusions of law. *Human Rights Party, supra.* [*Greenbriar Convalescent Center, Inc v Dep't of Public Health,* 108 Mich App 553, 561-562; 310 NW2d 812 (1981), lv gtd 412 Mich 870 (1981).]

Under the APA, a reverse FOIA request must follow the established procedures. That is, first there must be a request for a declaratory ruling from the relevant agency and, second, there must be a petition for judicial review of the declaratory ruling if the ruling is unsatisfactory. Only then can a court examine the FOIA determination and, even then, only under the APA standards. Most likely, a petition for review in a reverse FOIA case will assert a constitutional, statutory or common-law right of privacy reviewable under MCL 24.306(1)(a) or (e); MSA 3.560(206)(1)(a) or (e) as arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion. In the instant case, however, the required procedures were not followed. Plaintiffs' pleadings and the circuit court file disclosed nothing to suggest that the HMOs ever requested or received a declaratory ruling from the insurance commissioner predicated upon which they could properly seek judicial review. The circuit court complaint simply avers that "plaintiffs have made numerous attempts to reach an agreement with the Commissioner of Insurance on this matter to no avail." This failure of the plaintiffs to follow the procedures for administrative review as set forth in the APA raises serious jurisdictional problems.

However, the most egregious jurisdictional problem, and the one upon which we ultimately base our decision to reverse, is the question of standing of the plaintiffs to bring this suit. The plaintiff HMOs maintain that the disclosure of their employees' salaries would constitute a common-law invasion of privacy by the "public disclosure of embarrassing private facts." *Tobin v Civil Service Comm, supra,* p 672. Following the abandonment at the show-cause hearing of the claim that the commissioner could not obtain the salary information, the

focus of both the plaintiffs and the trial court was upon the privacy interest of HMO employees, rather than upon the privacy interests of the named plaintiffs. Nonetheless, the commissioner did not challenge the standing of the HMOs to assert their employees' rights of privacy either below or in this appeal.

The right of privacy is a personal right and cannot ordinarily be asserted by anyone other than the person whose privacy has been invaded. *Fry v Ionia Sentinel-Standard,* 101 Mich App 724, 730; 300 NW2d 687 (1980); 3 Restatement Torts 2d, § 652I, p 403; 18 ALR3d 873. Plaintiffs' complaint objected to disclosure of individual salaries, alleging that, as shown by affidavits attached to the complaint, "the filing of this salary and fringe benefit information with the Insurance Bureau has a severe chilling effect on the operations of Plaintiffs and other health maintenance organizations in the State of Michigan and on the ability of Plaintiffs and other HMOs to attract and maintain competent and qualified administrative and medical personnel at rates which are competitive with those organizations that do not have to publicly disclose the salaries and other compensations of their employees."

As previously noted, at the show-cause hearing, the HMOs abandoned their claim that the commissioner could not obtain the salary information and the court based its ruling upon the common-law privacy right to exempt individual employees' salaries from public disclosure. However, none of the individual employees whose rights served as the basis for the trial court's ruling are parties to this case. Nor do the HMOs have a privacy right of their own to assert. Although the focus of proceedings below was the individual employees' rights to privacy, plaintiffs' complaint also alleged that the

plaintiffs were damaged by difficulty in obtaining employees due to possible disclosure of salaries. Read broadly, the trial court could have determined that the allegation pled a threat to the plaintiff organizations' privacy. However, the right of privacy is primarily designed to protect the feelings and sensibilities of human beings and does not protect artificial entities. *Clinton Community Hospital Corp v Southern Maryland Medical Center,* 374 F Supp 450, 456 (D Md, 1974), aff'd 510 F2d 1037 (CA 4, 1975), cert den 422 US 1048; 95 S Ct 2666; 45 L Ed 2d 700 (1975). In *Clinton Community Hospital Corp,* the court said:

> It is clear that corporations do not enjoy a right to privacy. In *United States v Morton Salt Co,* 338 US 632, 652; 70 S Ct 357, 368; 94 L Ed 401 (1950), the Supreme Court ruled that corporations could not resist an FTC subpoena on invasion of privacy grounds, saying,
>
> [C]orporations can claim no equality with individuals in the enjoyment of a right to privacy. [Citation omitted.] They are endowed with public attributes. They have a collective impact upon society from which they derive the privilege of acting as artificial entities.
>
> In *Hale v Henkel,* 201 US 43, 78; 26 S Ct 370, 380; 50 L Ed 652 (1906), Justice Harlan concurring, said,
>
> In my opinion, a corporation—"an artificial being, invisible, intangible, and existing only in contemplation of law"—cannot claim the immunity given by the 4th Amendment; for it is not of the "people" within the meaning of that Amendment.
>
> Again, 62 Am Jur 2d, Privacy, § 11, p 692 reads,
>
> Since the right of privacy is primarily designed to protect the feelings and sensibilities of human beings rather than to safeguard property, business, or other pecuniary interests, the courts have denied this right to corporations and other institutions.

In *CNA Financial Corp v Local 743 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 515 F Supp 942 (ND Ill, 1981), the plaintiff sought an injunction against union campaigning in part based upon invasion of privacy. CNA Financial Corp alleged a breach of privacy in the union's appropriation of a list of employee names and addresses. The trial court's dismissal of the privacy claim was affirmed:

> The right of privacy is a personal right designed to protect persons from unwanted disclosure of personal information. It does not extend to protect corporations from disclosure of information acquired or maintained in the regular course of business. . . . Neither may CNA assert the privacy rights of its employees under well-settled principles governing standing. *Warth v Seldin,* 442 US 490, 95 S Ct 2197, 45 L Ed 2d 343 (1979); *Sierra Club v Morton,* 405 US 727, 92 S Ct 1361, 31 L Ed 2d 636 (1971). Accordingly, defendants' motion to dismiss Count VIII of the complaint will be granted. [515 F Supp 946-947.]

A suit for declaratory judgment is a judicial procedure whereby a court renders an opinion on a question of law. A court may not decide hypothetical issues, and where no case of actual controversy exists, the circuit court lacks subject-matter jurisdiction to enter a declaratory judgment. *Shavers v Attorney General,* 402 Mich 554, 588; 267 NW2d 72 (1978), cert den sub nom *Allstate Ins Co v Attorney General,* 442 US 934; 99 S Ct 2869; 61 L Ed 2d 303 (1979); *Recall Blanchard Committee v Secretary of State,* 146 Mich App 117, 121; 380 NW2d 71 (1985). To have standing, a party must show a direct effect to his legal interest. *Human Rights Party v Michigan Corrections Comm,* 76 Mich App 204, 213; 256 NW2d 439 (1977), lv den

402 Mich 906 (1978). A wrong to one gives no right of action to another whom it incidentally injures, *S C Hall Lumber Co v Gustin,* 54 Mich 624, 632; 20 NW 616 (1884), and the incidentally injured one cannot sue on behalf of those whose rights they assert. *Mercer v Michigan State Bd of Ed,* 379 F Supp 580, 584 (ED Mich, 1974), aff'd 419 US 1081; 95 S Ct 673; 42 L Ed 2d 678 (1974).

In *Human Rights Party, supra,* pp 211-212, this Court considered whether the plaintiff political party had standing to assert violations of constitutional rights of state prison inmates. The Court, considering declaratory judgments under the APA, concluded that unless aggrieved prisoners were added to the suit by joinder, the plaintiff would be without standing to pursue the suit. In doing so, the Court cited *Wisconsin's Environmental Decade, Inc v Public Service Comm of Wisconsin,* 69 Wis 2d 1, 9-10; 230 NW2d 243, 247-248 (1975), which considered the meaning of the terms "aggrieved" person, "directly affected" by the agency decision, and that the decision "directly affect the legal rights, duties or privileges" of the person seeking review. The Wisconsin Supreme Court, in turn, likened its own analysis to the two-pronged standing analysis outlined by the United States Supreme Court in *Ass'n of Data Processing Service Organizations v Camp,* 397 US 150, 153, n 7; 90 S Ct 827; 25 L Ed 2d 184 (1970), and *Barlow v Collins,* 397 US 159; 90 S Ct 832; 25 L Ed 2d 192 (1970).

That analysis asks: (1) Does the challenged action cause the petitioner injury in fact? and (2) is the interest allegedly injured arguably within the zone of interests to be protected by the statute or constitutional guarantee in question? Justice Brennan, concurring in *Barlow, supra,* 397 US 172-173, stated that the purpose of the injury in fact re-

quirement is to bring concreteness and adverseness to a case. An interest meeting the second prong of the test could represent aesthetic, conservational, spiritual, recreational or economic values. The Michigan court rule for declaratory judgments, GCR 1963, 521, now MCR 2.605, is sufficiently similar to the "case" or "controversy" requirement of Article III of the United States Constitution to support our adoption of the federal test.

Accordingly, we find that plaintiff HMOs have failed to allege injuries that are more than merely conjectural. The line of causation between the commissioner's disclosure of individual HMO employee salaries and the alleged "severe chilling effect" on the operations of the HMOs is not readily apparent on the record presented. Most importantly, the HMOs raise only the putative right of privacy of their employees and fail to show the existence of any injury to themselves of sufficient immediacy and ripeness to warrant judicial intervention. See *Warth v Seldin, supra.*

As we recently reiterated in *J F Cavanaugh & Co v Detroit,* 126 Mich App 627, 632; 337 NW2d 605 (1983):

> By deciding issues absent an actual controversy, this Court could impede the progress of future litigants who may be involved in a real factual controversy. *Stockler v Treasury Dep't,* 75 Mich App 640, 645; 255 NW2d 718 (1977), app dis 435 US 963; 98 S Ct 1598; 56 L Ed 2d 54 (1978).

We therefore conclude that the circuit court was without subject-matter jurisdiction to determine the question before it. The decision of the circuit court is reversed and remanded for further proceedings not inconsistent with this opinion.