NOVAK v NATIONWIDE MUTUAL INSURANCE COMPANY

Docket No. 204162. Submitted February 2, 1999, at Detroit. Decided June 1, 1999, at 9:05 A.M. Leave to appeal sought.

Terry Novak and Novak & Associates Insurance, Inc., brought an action in the Wayne Circuit Court against Nationwide Mutual Insurance Company and other Nationwide Insurance companies (hereinafter Nationwide) and Edward Malinowski, seeking damages for Nationwide's allegedly illegal termination of Novak's employment as an insurance sales agent. When plaintiff Novak took over plaintiff agency from his father, he signed an employment agreement with Nationwide that specified, among other things, that he would be enrolled in Nationwide's agent development program upon successful completion of a training period, that he would begin to receive full commissions on his father's former accounts if he successfully handled those accounts for two years, that he would not sell insurance for insurance carriers other than Nationwide unless directed to do so by Nationwide, and that the employment contract was terminable at will by either party. Less than two years later, Nationwide terminated Novak's employment. Novak asserted that the termination of his employment was not subject to the employment-at-will provision of the employment agreement, that he was entitled to continued employment by reason of promissory estoppel or fraudulent and innocent misrepresentations, and that the termination of his employment was improper because it resulted in violations of the Insurance Code, the federal Fair Housing Act, and the Civil Rights Act. Nationwide moved for summary disposition, asserting that, notwithstanding the at-will provision of the employment agreement, Novak's employment was terminated for cause. The court, Brian K. Zahra, J., granted summary disposition for Nationwide. Plaintiff Novak appealed.

The Court of Appeals *held*:

1. Because the written employment contract contained both an express provision that Novak's employment was at-will and an express provision that any modification of the contract must be in writing and signed by a representative of Nationwide, Novak's allegation that he was told by one of Nationwide's employees that the at-will provision would not apply to him, even if true, would not negate the express language of the written contract that he signed.

Accordingly, the trial court properly granted summary disposition for Nationwide with respect to Novak's common-law wrongful discharge claim. Further, because Novak failed to claim that Nationwide promised just-cause employment to its work force in general, the court properly dismissed Novak's claim of a right to continued employment based on a legitimate expectation of just-cause employment.

2. Novak alleged that notwithstanding the employment contract's at-will provision, Nationwide's termination of his employment was precluded by the anti-redlining provision of § 209 of the Michigan Insurance Code, MCL 500.1209; MSA 24.11209. Subsection 3 of § 209, MCL 500.1209(3); MSA 24.11209(3), provides that a home or automobile insurer is prohibited from canceling an agent's contract except for malfeasance, breach of fiduciary duty or trust, violation of the Insurance Code, failure to perform in accordance with the parties' contract, or failure to submit at least twenty-five applications for insurance in the preceding twelve-month period. Subsection 4 of § 209, MCL 500.1209(4); MSA 24.11209(4), provides that subsection 3 is not to be construed as permitting termination of an agent's authority where the termination is based primarily on the location of the agent's insurance business or on the actual or expected loss experience of the agent's business insofar as the loss experience is related to the geographical location of the agent's business. Subsection 5, MCL 500.1209(5); MSA 24.11209(5), provides that subsection 3 does not apply with respect to an agent that is an employee of the insurer where the property rights in the renewal of insurance policies are owned by the insurer and the termination of the agent's employment contract does not result in the cancellation or nonrenewal of any home or automobile insurance policy.

3. There is no factual dispute that Novak was an employee of Nationwide or that Nationwide owned the property rights in the renewal of the policies issued to Novak's customers. Although Novak suggests that the termination of his employment resulted in the cancellation or nonrenewal of home or automobile insurance policies, pointing to a slightly higher rate of cancellation of automobile policies than was usual following the termination, Novak failed to show a single instance in which a home or automobile policy cancellation resulted from the termination of his employment rather than from some legitimate reason. Further, Nationwide's alleged inefficient servicing of the policies of Novak's customers after the termination, even if it resulted in those customers seeking insurance with other insurers, does not constitute constructive cancellation of those policies so as to constitute a policy cancellation

within the meaning of the language of subsection 5. Accordingly, the trial court properly concluded that the termination of Novak's employment was subject to subsection 5 and was thus not subject to the restrictions found in subsection 3.

4. Subsection 4 is clearly intended to clarify the nature of the rights and restrictions set forth in subsection 3 and was not meant to stand alone or to create any rights separate and apart from those protected by subsection 3. Accordingly, the exclusionary reference to subsection 3 that is found in subsection 5 is equally applicable to subsection 4, and the trial court properly dismissed Novak's claim insofar as it was based on § 209 of the Insurance Code.

5. Novak's claim that the alleged statement by an employee of Nationwide that the at-will provision of the employment contract would not apply to Novak created a right to continued employment under the theory of promissory estoppel is without merit. Because the contract specifically provided that Novak's employment was to be at-will and that all oral promises were integrated into the written agreement, the circumstances precluded an objective finding of a clear and definite promise of just-cause employment, and the trial court properly dismissed the promissory estoppel claim.

6. Novak's claim based on fraudulent and innocent misrepresentation is without merit. Novak claimed that he was induced into signing the written agreement by Nationwide's informing him that he would immediately begin to receive commissions on renewals of policies serviced by his father, that everything in Nationwide's power would be done to transfer his father's agency to him, that his office expenses would be paid directly to the creditors, that the at-will provision in the written contract did not apply to him, and that he would be allowed to sell insurance for companies other than Nationwide.

7. A claim of fraudulent misrepresentation requires a showing that a plaintiff suffered damages as a result of acting on a representation that a defendant knew or should have known was false and that was made by the defendant with the intention that the plaintiff act on the representation. Novak failed to establish the elements of a claim of fraudulent misrepresentation. Because Novak acknowledged that the statement concerning commissions was made after the employment contract was signed, it could not have induced Novak to sign the contract. The employment manual that Novak referred to in conjunction with the allegation concerning the transfer of the agency provides that Nationwide would "sincerely endeavor" to facilitate the transfer if other conditions were met, and there is no evidence that Nationwide failed to do that. There was no showing that the promise with respect to office expenses

was false when made, but, rather, the record shows that Nationwide was unable to pay Novak's office expenses directly because of unforeseen billing difficulties and the apportioning of office expenses between Novak and his non-Nationwide office mate. The allegations relative to the at-will provision and the selling of other insurance were directly contrary to provisions in the written contract, and, thus, Novak could not have reasonably relied on either statement.

8. Novak's claim that his firing resulted in racial discrimination that was actionable under the federal Fair Housing Act, 42 USC 3604 *et seq.*, was not timely brought. The period of limitation for such a claim is two years. Because the basis of his claim was the economic effect resulting from his firing, the period of limitation began to run on the date of his firing. Thus, the claim under the Fair Housing Act was time-barred three months before Novak brought his action.

9. To the extent that Nationwide may have acted to deny insurance to minorities in violation of § 302 of the Civil Rights Act, MCL 37.2302; MSA 3.548(302), which prohibits racial discrimination in the provision of goods and services, Novak lacked standing to raise that claim. Although Novak may have had an economic interest, § 302 protects the persons who are denied goods and services, not those who are providing those services. Because the Civil Rights Act does not confer standing on insurance agents to bring an action on behalf of persons who are denied insurance by reason of race, Novak lacked standing to bring a claim under § 302 of the Civil Rights Act. Further, because Novak did not show that Nationwide had coerced, intimidated, threatened, or interfered with him as a result of his having aided or encouraged a minority person to exercise any right under the Civil Rights Act, Novak failed to plead a viable action under subsection f of § 701 of the Civil Rights Act, MCL 37.2701(f); MSA 3.548(701)(f). Moreover, because newly licensed drivers are not a protected class under the Civil Rights Act, any attempt by Nationwide to obstruct or to prevent Novak from issuing automobile insurance to newly licensed drivers could not constitute the obstruction or prevention of a person from complying with the act in violation of subsection e of § 701 of the Civil Rights Act, MCL 37.2701(e); MSA 3.548(701)(e).

Affirmed.

1. INSURANCE — INSURANCE CODE — REDLINING — CONSTRUCTIVE CANCELLATION OF INSURANCE.

Inefficient servicing by an insurer of the policies of its customers, even if such servicing results in those customers seeking insurance with other insurers, does not constitute constructive cancellation

of those policies so as to constitute cancellation of a policy within the meaning of the language of subsection 5 of the anti-redlining provisions of § 209 of the Insurance Code (MCL 500.1209[5]; MSA 24.11209[5])

2. INSURANCE — INSURANCE CODE — REDLINING.

Subsection 4 of the anti-redlining provision of § 209 of the Insurance Code is clearly intended to clarify the nature of the rights and restrictions set forth in subsection 3 of § 209 and is not meant to stand alone or to create any rights separate and apart from those protected by subsection 3; accordingly, the exclusionary reference to subsection 3 that is found in subsection 5 of § 209 is equally applicable to subsection 4 (MCL 500.1209[3], [4], [5]; MSA 24.11209[3], [4], [5]).

3. FRAUD — MISREPRESENTATION — REASONABLE RELIANCE ON MISREPRESENTATION.

An actionable claim of fraudulent misrepresentation requires a showing that a plaintiff reasonably relied on the alleged misrepresentation.

4. CIVIL RIGHTS — RACIAL DISCRIMINATION — GOODS AND SERVICES — INSURANCE AGENTS — STANDING.

An insurance agent lacks standing to bring an action under the Civil Rights Act for an alleged attempt by an insurance company to deny insurance to minority customers of the agent; the Civil Rights Act protects the rights of persons who are being denied goods and services, not the economic interests of persons who attempt to provide the goods and services (MCL 37.2302; MSA 3.548[302]).

5. CIVIL RIGHTS — CIVIL RIGHTS ACT — INSURANCE AGENTS — COERCION — ACTIONS.

An insurance agent that has not aided or encouraged a minority customer to exercise any right protected by the Civil Rights Act in response to the denial of insurance by an insurer may not maintain an action against the insurer under the provision of the Civil Rights Act prohibiting coercion or intimidation of a person who aided or encouraged another in the exercise or enjoyment of a right protected by the Civil Rights Act (MCL 37.2701[f]; MSA 3.548[701][f]).

*James W. Bigelow,* for the plaintiff.

*Harvey Kruse, P.C.* (by *Thomas F. Kauza* and *William F. Rivard*), for the defendants.

Before: MACKENZIE, P.J., and GRIBBS and WILDER, JJ.

MacKenzie, P.J. Plaintiff Terry Novak (plaintiff), who alleged that the Nationwide defendants (defendants) illegally terminated his position as an insurance sales agent because they found his Detroit-area clients economically undesirable, appeals as of right from an order granting defendants' motion for summary disposition of his nine-count complaint. We affirm.

### FACTUAL BACKGROUND

In August 1991, in anticipation of assuming responsibility for his father's insurance agency, Novak & Associates Insurance, Inc., plaintiff signed an employment agreement with defendants. Among other things, the agreement specified that (1) if plaintiff successfully completed a training period, defendants would enroll him in their New Agent Development Program or New Business Agent Program, (2) if plaintiff successfully handled his father's former accounts for two years, he would then begin to receive full commissions on those accounts, (3) plaintiff was not to sell insurance for any insurance carriers other than defendants unless defendants specifically directed him to do so, and (4) plaintiff's employment with defendants was terminable at will by either party.

In March 1993, defendants terminated plaintiff's employment. Plaintiff filed suit, claiming, among other things, that the at-will provision in the employment contract was inapplicable to him and that defendants improperly terminated his employment on the basis of his reluctance to move his agency out of Wayne County. Defendants argued that notwithstanding the at-will provision, they properly terminated

plaintiff's employment because he (1) commingled personal and business funds, (2) often remitted premium payments to them in an untimely fashion, and (3) allowed unauthorized individuals to sign insurance certificates.

### STANDARDS OF REVIEW

Except for his claim under the federal Fair Housing Act (FHA), 42 USC 3601 *et seq.,* discussed *infra,* all of plaintiff's claims were dismissed under MCR 2.116(C)(10). We review de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *Paul v Lee,* 455 Mich 204, 210; 568 NW2d 510 (1997). Like the trial court, we look at the entire record, view the evidence in favor of the nonmoving party, and decide if there exists a relevant factual issue about which reasonable minds might differ. *Id.* If, as in the instant case, the nonmoving party would bear the burden of proof at trial, that party, in order to avoid summary disposition, must provide documentary evidence showing the existence of a disputable issue. *Quinto v Cross & Peters Co,* 451 Mich 358, 362; 574 NW2d 314 (1996).

The trial court dismissed plaintiff's FHA claim under MCR 2.116(C)(7) because it concluded that the period of limitation for the claim had run. We review a grant of summary disposition under MCR 2.116(C)(7) de novo. *Iovino v Michigan,* 228 Mich App 125, 131; 577 NW2d 193 (1998). We consider all documentary evidence submitted by the parties and accept the plaintiff's well-pleaded allegations, except those contradicted by documentary evidence, as true. *Id.*; *Patterson v Kleiman,* 447 Mich 429, 433-435; 526 NW2d 879 (1994). We view the uncontradicted allegations in

favor of the plaintiff and determine whether the claim is time-barred. *Id.*

Plaintiff argues that the termination of his employment violated an implied just-cause employment agreement and that the trial court therefore should not have summarily disposed of his wrongful discharge and breach of legitimate expectations claims. He bases this argument on an alleged oral statement by one of defendants' employees that the at-will termination provision in the written employment contract would not apply to him. This alleged oral statement, however, did not negate the at-will provision in the written contract, which also contained a provision requiring that modifications of the contract be in writing and be signed by a company representative. When an employment contract expressly provides for employment at will, a plaintiff, by signing the contract, assents to employment at will and cannot maintain a cause of action based on a prior oral agreement for just-cause employment. *Nieves v Bell Industries, Inc,* 204 Mich App 459, 463; 517 NW2d 235 (1994); see also *Stopczynski v Ford Motor Co,* 200 Mich App 190, 193; 503 NW2d 912 (1993). Thus, the trial court properly dismissed plaintiff's wrongful discharge claim. The court also properly dismissed plaintiff's breach of legitimate expectations claim, because a claim based on legitimate expectations rests on the employer's promises to the work force in general—for example, promises contained in a company handbook—rather than on promises made to an individual employee, and because plaintiff made no claim that

defendants promised just-cause employment to the work force in general. *Nieves, supra* at 464; see also *Dolan v Continental Airlines/Continental Express,* 454 Mich 373, 384, 386-387; 563 NW2d 23 (1997).

INSURANCE CODE ANTI-REDLINING PROVISIONS

Plaintiff argues that notwithstanding the employment contract's at-will provision, defendants nevertheless improperly terminated his employment because the Insurance Code precludes the termination of an agent's employment for certain specified reasons even if an employment contract otherwise allows for it. Specifically, plaintiff claims that there was a question of fact regarding whether defendants discharged him because of the loss history and geographic location of his Wayne County agency and thereby violated the anti-redlining provisions contained in § 209 of the Michigan Insurance Code, MCL 500.1209; MSA 24.11209, which states, in pertinent part, as follows:

(3) As a condition of maintaining its authority to transact insurance in this state, *an insurer transacting automobile insurance or home insurance in this state shall not cancel an agent's contract . . . except for 1 or more of the following reasons*:

(a) Malfeasance.

(b) Breach of fiduciary duty or trust.

(c) A violation of this act.

(d) Failure to perform as provided by the contract between the parties.

(e) Submission of less than 25 applications for home insurance and automobile insurance within the immediately preceding 12-month period.

*(4) Subsection (3) shall not be construed as permitting a termination of an agent's authority based primarily upon any of the following:*

(a) The *geographic location* of the agent's home insurance or automobile insurance business.

(b) The *actual or expected loss experience* of the agent's automobile or home insurance business, related in whole or in part to the geographical location of that business.

\*          \*          \*

(5) Subsection (3) . . . shall not apply with respect to an agent who is an employee of an insurer . . . if the property rights in the renewal are owned by the insurer . . . and the cancellation or termination of the agent's contract does not result in the cancellation or nonrenewal of any home or automobile insurance policy. [Emphasis added.]

Plaintiff argues that he did not fall within the parameters of subsection 5—and that he was therefore protected by subsections 3 and 4—because his discharge resulted in the cancellation of home and automobile insurance policies. He additionally argues that even if subsection 5 *had* applied to him, defendants nevertheless impermissibly terminated his employment because subsection 4, which prohibits termination based on location and loss experience, is not inextricably linked to subsection 3 and is thus unaffected by subsection 5. We disagree with both of these arguments.

First, there was no genuine factual dispute regarding whether plaintiff fell within the parameters of subsection 5. Plaintiff did not and does not dispute that he was an employee of defendants or that defendants owned the property rights in his customers' policy renewals. Accordingly, the only question relevant to the requirements of subsection 5 is

whether plaintiff's termination resulted in the cancellation or nonrenewal of any home or automobile insurance policies. Although the record did suggest that after plaintiff's discharge a slightly higher cancellation rate of automobile insurance policies occurred than was usual, there was no evidence that any of these policies were canceled for invalid reasons. As the party who opposed summary disposition and who would bear the burden of proof at trial, plaintiff had the obligation to show that at least one home or automobile policy cancellation resulted from his termination as an agent and not from a legitimate reason. See *Quinto, supra* at 362. Plaintiff failed to do so. He implies that some customers' policies were "constructively" canceled because Nationwide made the servicing of their policies so difficult that the customers were forced to seek other insurance. We agree with the trial court, however, that inefficient servicing of an account cannot be equated with a policy cancellation under the unambiguous language of subsection 5. Because plaintiff was defendants' employee, because defendants owned the renewal rights in the policies, and because plaintiff did not produce evidence that his termination caused the cancellation of at least one policy, he satisfied the requirements of subsection 5 and therefore did not enjoy the protection of subsection 3.

Nor did plaintiff enjoy the protection of subsection 4, because that subsection, by its plain wording, merely *construes* subsection 3. In other words, if subsection 3 is inapplicable, then subsection 4 is also inapplicable. We do not agree with plaintiff's argument that subsection 4 stands alone. In statutory interpretation, the primary goal must be to ascertain

and give effect to the Legislature's intent, *People v Stanaway*, 446 Mich 643, 658; 521 NW2d 557 (1994), and the judiciary should presume that the Legislature intended a statute to have the meaning that it clearly expresses. *People v Roseburgh*, 215 Mich App 237, 239; 545 NW2d 14 (1996). A court should not speculate about the legislative intent beyond the statute's actual words. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995). Here, the wording of subsection 4 clearly does *not* state a separate rule of law but merely clarifies the meaning of subsection 3. Thus, subsection 4 does not stand alone but is instead, like subsection 3, subject to the exclusion found in subsection 5. Because plaintiff fell within the subsection 5 exclusion, he was not protected by subsection 4, and his claim that defendants illegally terminated his employment because of his agency's loss history and location was therefore not viable.

### PROMISSORY ESTOPPEL

Next, plaintiff argues that a viable claim of promissory estoppel existed because defendants told him that the at-will provision in the contract did not apply to him. Although related to theories of wrongful discharge and breach of legitimate expectations, promissory estoppel is a distinct cause of action. See *Marrero v McDonnell Douglas Capital Corp*, 200 Mich App 438, 442; 505 NW2d 275 (1993). The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if

injustice is to be avoided. *Id.* In determining whether a requisite promise existed, we are to objectively examine the words and actions surrounding the transaction in question as well as the nature of the relationship between the parties and the circumstances surrounding their actions. *First Security Savings Bank v Aitken*, 226 Mich App 291, 313; 573 NW2d 307 (1997); *State Bank of Standish v Curry*, 442 Mich 76, 86; 500 NW2d 104 (1993). We are to exercise caution in evaluating an estoppel claim and should apply the doctrine only where the facts are unquestionable and the wrong to be prevented undoubted. *Marrero, supra* at 442-443. Here, assuming arguendo that one of defendants' employees told plaintiff that the at-will provision in the written contract did not apply to him, the circumstances surrounding the statement precluded an objective finding of a clear and definite promise of just-cause employment, because the signed contract contained an at-will provision, along with an integration clause, that expressly contradicted the alleged oral representation. Therefore, plaintiff's employment with defendants was terminable at will, and the trial court properly dismissed plaintiff's promissory estoppel claim.

FRAUDULENT AND INNOCENT MISREPRESENTATION

Next, plaintiff argues that he raised viable claims of fraudulent and innocent misrepresentation regarding several statements defendants allegedly made in connection with hiring him. He claims that defendants induced him into signing the written contract by fraudulently informing him that (1) he would immediately begin to receive commissions on renewals of policies that had been serviced by his father, (2) they

would do "everything in their power" to facilitate the transfer of his father's agency to him, (3) his office expenses would be paid directly to the creditors, (4) the at-will provision in the written contract did not apply to him, and (5) he would be allowed to sell insurance for companies other than Nationwide.

The elements of fraudulent misrepresentation are (1) the defendant made a material representation, (2) the representation was false, (3) when making the representation, the defendant knew or should have known it was false, (4) the defendant made the representation with the intention that the plaintiff would act upon it, and (5) the plaintiff acted upon it and suffered damages as a result. *M&D, Inc v W B McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998). A claim of innocent misrepresentation is shown if a party to a contract detrimentally relies on a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation. *Id.* at 27-28. We find no evidence of either fraudulent or innocent misrepresentation with regard to the above statements about which plaintiff complains.

First, regarding statement 1 above, that plaintiff would immediately begin to receive commissions on the renewals of policies that had been serviced by his father, plaintiff testified that the allegedly false information defendants gave him about commissions occurred *after* he signed the contract; thus, he could not have relied on the information in signing the contract. Second, there is no evidence that defendants made statement 2 above; the employment manual referenced by plaintiff in conjunction with this alleged statement says only that defendants would "sincerely

endeavor" to facilitate the transfer of retired agents' agencies to relatives, provided that certain other criteria were met, and there was no evidence that defendants failed to do this. Regarding statement 3, that plaintiff's office expenses would be paid directly to the creditors, plaintiff did not show that this statement was false; instead, the evidence showed that defendants *did* intend to pay plaintiff's creditors directly but later found that they were unable to do so because of unforeseen billing difficulties and because the office expenses had to be apportioned between plaintiff and his non-Nationwide office mate.

Finally, the written contract, with its integration clause, expressly contradicted statements 4 and 5, making plaintiff's alleged reliance on these statements unreasonable. See *Nieves, supra* at 460-465 (the plaintiff acted unreasonably in relying on oral statements that were contradicted by a written employment agreement). There is a conflict in this Court regarding whether reliance on a false representation must be reasonable to support a fraud claim. In *Nieves, supra* at 464, *Webb v First of Michigan Corp*, 195 Mich App 470, 474-475; 491 NW2d 851 (1992), *State-William Partnership v Gale*, 169 Mich App 170, 179; 425 NW2d 756 (1988), and *Cormack v American Underwriters Corp*, 94 Mich App 379, 385; 288 NW2d 634 (1979), this Court indicated that the reliance must be reasonable. The panel in *Phinney v Perlmutter*, 222 Mich App 513, 534-537; 564 NW2d 532 (1997), disagreed. Citing *People v Young*, 212 Mich App 630, 639; 538 NW2d 456 (1995), remanded on other grounds 453 Mich 976 (1996), as authority, the *Phinney* panel indicated that it was not following *Nieves*, a 1994 opinion, under Administrative Order No. 1996-4 (the

predecessor to MCR 7.125, which requires that this Court follow rules of law established in Court of Appeals opinions issued on or after November 1, 1990) because there were opinions both before and after *Nieves* that dispensed with the reasonableness requirement. *Phinney, supra* at 536.

*Young,* however, clearly indicated that in cases of conflicting opinions issued on or after November 1, 1990, the Court is to follow the first opinion that addresses the matter at issue. *Young, supra* at 639. Thus, the *Phinney* Court's reliance on cases issued *after Nieves* in deciding that *Nieves* need not be followed was misplaced. Indeed, the *Phinney* Court could follow a case conflicting with *Nieves* only if it was issued before *Nieves* and after November 1, 1990. *Phinney* cited one case in this category—*Brownell v Garber,* 199 Mich App 519, 534; 503 NW2d 81 (1993)— and one Supreme Court case, *Kassab v Michigan Basic Property Ins Ass'n,* 441 Mich 433, 442-443; 491 NW2d 545 (1992). *Phinney, supra* at 536. These two opinions, however, merely reiterated the well-known requirement that reliance must occur for a successful fraud claim; they did not directly address the issue at hand, i.e., whether the reliance must be reasonable. Both *Nieves, supra* at 464, and *Webb, supra* at 474-475, however, did address this issue, holding that the reliance must indeed be reasonable. Thus, the *Phinney* panel was required to follow this interpretation, as are we, under MCR 7.215 and *Young, supra* at 639. Notwithstanding our obligation to follow *Nieves* and *Webb,* we believe these opinions stated the correct rule of law, because a person who *unreasonably* relies on false statements should not be entitled to damages for misrepresentation. Thus, because plain-

tiff's reliance on statements 4 and 5 was not reasonable in light of the written contract, the statements, as a matter of law, did not support a misrepresentation claim. See *Nieves, supra* at 464-465.

## THE FEDERAL FAIR HOUSING ACT

Next, plaintiff argues that the trial court improperly dismissed his claim based on the FHA, which, among other things, prohibits racial discrimination in transactions involving residential real estate. There is a split of authority regarding whether insurance redlining is actionable under the FHA, see *Mackey v Nationwide Ins Cos*, 724 F2d 419 (CA 4, 1984), and *Nationwide Mut Ins Co v Cisneros*, 52 F3d 1351 (CA 6, 1995), but we need not attempt to resolve this issue today, because plaintiff's claim was untimely. The limitation period for claims under the FHA is two years, 42 USC 3613(a)(1)(A),   and plaintiff filed suit two years and three months after his discharge. Therefore, his FHA claim was barred by the statute of limitations. Plaintiff attempts to avoid this result by alleging that continuing violations of the act served to extend the limitation period. See *Equal Employment Opportunity Comm v Penton Industrial Publishing Co, Inc*, 851 F2d 835, 838-839 (CA 6, 1988)   (similar discriminatory acts occurring within the limitation period can extend the filing deadline for a claim that would otherwise be time-barred). Specifically, plaintiff alleges that cancellations of homeowner insurance policies within the two years preceding the initiation of his suit were continuing violations of the act. However, the basis for plaintiff's FHA claim had to be the economic consequences of his discharge, see *Mackey, supra* at 422-423 (insurance agent gains standing

692 235 M<small>ICH</small> A<small>PP</small> 675 [June

under FHA by virtue of economic injury), meaning that the critical violation for the purposes of his claim was *the firing itself*, which led to financial loss, and not the cancellation of insurance policies after his termination. Thus, plaintiff cannot logically argue that later policy cancellations were continuing violations that extended the limitation period for his FHA claim, especially because a key to whether the continuing violations doctrine should apply is whether the original discriminatory act had the degree of permanence that should trigger an employee's assertion of rights. *Anderson v City of Bristol*, 6 F3d 1168, 1175 (CA 6, 1993). Plaintiff's firing did indeed have a degree of permanence that should have triggered his assertion of his rights, and he was therefore obligated to commence his FHA claim within two years of the date of his discharge. The trial court properly dismissed plaintiff's FHA claim under MCR 2.116(C)(7).

THE CIVIL RIGHTS ACT

Finally, plaintiff argues that the trial court improperly dismissed his claims based on the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* He claims that defendants' alleged attempt to deny insurance to minorities violated § 302 of the act, MCL 37.2302; MSA 3.548(302), which prohibits racial discrimination in the provision of goods and services. We agree with the trial court, however, that plaintiff had no standing to raise this claim. In order to have standing, a person must have a "legally protected" interest that is in jeopardy of being adversely affected by the challenged action. *In re Foster*, 226 Mich App 348, 358; 573 NW2d 324 (1997). While plaintiff did have an economic interest that was adversely affected

by his discharge, this interest was not legally protected. Section 302 of the Civil Rights Act protects *the persons who are being denied goods and services*, not the persons who are attempting to provide the goods and services. The minorities to whom defendants allegedly denied insurance coverage, as the persons protected by the statute, are the proper plaintiffs for a redlining claim. See *Health Central v Comm'r of Ins*, 152 Mich App 336, 348; 393 NW2d 625 (1986). Indeed, in the absence of a rule of law conferring standing, plaintiff could not bring civil rights claims on behalf of those seeking insurance. See *Mackey, supra* at 421-423, *Gladstone Realtors v Village of Bellwood*, 441 US 91, 103; 99 S Ct 1601; 60 L Ed 2d 66 (1979), and *Havens Realty Corp v Coleman*, 455 US 363, 372; 102 S Ct 1114; 71 L Ed 2d 214 (1982) (insurance agent who alleges racially discriminatory redlining has standing under broad standing provisions of FHA but does not have standing under federal Civil Rights Act). Since the Civil Rights Act itself does not confer standing on insurance agents for claims under § 302, plaintiff was not the proper person to seek enforcement of the rights of those seeking insurance.

Plaintiff also claims that defendants violated § 701 of the Civil Rights Act, MCL 37.2701; MSA 3.548(701). He alleges violations of subsections e and f, which state:

> Two or more persons shall not conspire to, or a person shall not:
>
> *   *   *
>
> (e) Willfully obstruct or prevent a person from complying with this act or an order issued or rule promulgated under this act.

(f) Coerce, intimidate, threaten, or interfere with a person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act. [MCL 37.2701(e), (f); MSA 3.548(701)(e), (f).]

We disagree that there was a question of fact regarding whether defendants violated subsection f, because the evidence shows that plaintiff did *not* help any minority insurance applicants gain equal access to insurance coverage as guaranteed under § 302 of the act. His deposition testimony indicated that when defendants told him not to insure someone through Nationwide, he reluctantly obeyed them. Subsection f would have applied only if plaintiff *disobeyed* defendants in their alleged redlining scheme and was threatened or intimidated as a result. Nor do we agree that there was a question of fact regarding whether defendants violated subsection e. With regard to this subsection, plaintiff alleges that defendants prevented him from issuing automobile insurance to newly licensed drivers. However, newly licensed drivers are not a subset of persons protected by the Civil Rights Act, meaning that even if plaintiff did try to insure these people through Nationwide, he was not trying to "comply with the act" under subsection e. Accordingly, the trial court properly dismissed plaintiff's claims under § 701 of the Civil Rights Act.

Affirmed.