**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0227n.06**
**Filed: March 30, 2005**

**No. 03-2618**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NASSIF INSURANCE AGENCY, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CIVIC PROPERTY AND CASUALTY COMPANY; | ) | COURT FOR THE EASTERN |
| NEIGHBORHOOD SPIRIT PROPERTY AND | ) | DISTRICT OF MICHIGAN |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: BOGGS, Chief Judge; KENNEDY and MARTIN, Circuit Judges.

**PER CURIAM.** Appellant Nassif Insurance Agency (hereinafter NIA) appeals a grant of summary judgment for Appellees, Civic Property and Casualty Company and Neighborhood Spirit Property and Casualty Company (hereinafter the Companies) on the ground that disputed questions of fact remained concerning NIA's termination as an insurance agent for the Companies. Because the district court correctly concluded that NIA failed to rebut the Companies' evidence that NIA was terminated for legitimate business reasons, we affirm the ruling.

**I**

NIA is an independent insurance agency owned by Walid Nassif and located in Dearborn, Michigan. At the time of the dispute, NIA's clientele was composed primarily of

members of the large Arab-American community living in East Dearborn. NIA was a non-exclusive agent of the Companies, which specialized in providing insurance to businesses and homeowners in underserved urban areas. At the time the dispute arose, the Companies had four agents serving the Dearborn area and more policyholders in East Dearborn than in any other part of Michigan except the City of Detroit.

NIA became a non-exclusive agent of the Companies in 1997. The agency agreement Walid Nassif signed gave him the authority to execute insurance policies "in accordance with the Company's underwriting rules and regulations. . . ." Either party could terminate the relationship on 90 days' written notice for any reason and without stating a reason.

In Fall 2001, the Companies identified seven or eight agencies, including NIA, which were not complying with the underwriting guidelines and other rules and which were experiencing high loss ratios on the policies they wrote. Each of these agencies was offered the opportunity to correct its practices under the Unprofitable Agency Rehabilitation Plan. This plan primarily required the agencies to make proper inspections of new properties and to improve their loss ratios–a result that would presumably follow from insuring only properties that met the Companies' standards. Upon signing the Rehabilitation Plan, the agent's authority to bind policies was suspended. The agent was also warned that "failure to meet all of the conditions of this plan could result in the termination of their appointment with the company."

NIA apparently did not sign the Rehabilitation Plan. Still trying to bring NIA into compliance, the Companies sent Walid Nassif a letter in mid-October 2001 notifying him that his authority to bind policies had been suspended and outlining the procedure to rehabilitate his

agency. The letter stated that the suspension would continue until he was notified otherwise in writing. The procedure for bringing the agency into compliance was the same as that provided in the Rehabilitation Plan. Nassif claims not to have received the letter. However, in early November 2001, the Companies' representatives met with Nassif in person, told him that his authority had been suspended, explained what steps he needed to take to improve his agency, and gave him another copy of the October letter. Nassif claims that this meeting was the first he heard of his suspension and that at the end of the meeting he was told he could have his authority to bind policies back. He has produced no written evidence that his suspension was lifted.

NIA not only continued to bind policies after the suspension but its salesmen also continued to fail to meet the Companies' inspection requirements. At least three of the properties for which NIA wrote policies were determined by later inspectors not to meet the Companies' guidelines. As Appellant was already suspended, the Companies were unwilling to accept even a single non-complying policy from NIA. On April 18, 2002, the Companies notified Appellant that they were terminating the agency, effective August 18, 2002, "for failure to comply with your business plan and violation of your binding authority."

NIA sued the Companies, claiming 1) that they terminated NIA because of its high loss ratios in violation of the Michigan Essential Insurance Act, Mich. Comp. Laws § 500.1209; 2) that they terminated Nassif's customers after his termination; and 3) that they failed to pay him commissions on policies he had written. NIA acknowledged prior to the hearing on the motion for summary judgment that it had no evidence on issue two, and NIA does not appeal issue three.

At the close of discovery, the Companies filed a motion for summary judgment. The sum

total of NIA's rebuttal evidence was an unsigned, unnotarized "affidavit" by Walid Nassif. The district judge granted summary judgment for the Companies. NIA timely filed this appeal.

**II**

We review a grant of summary judgment *de novo*. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). Summary judgment is appropriate where the evidence offered by the parties in the form of "pleadings, depositions, answers to interrogatories, . . . admissions on file, [and] affidavits" demonstrates no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court considers all factual evidence and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Once the moving party has met its burden of persuasion, the non-moving party must offer more than a mere scintilla of evidence in rebuttal. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986); *accord Liberty Mut. Fire Ins. Co. v. Massarone,* 326 F.3d 813, 815 (6th Cir. 2003). That evidence must be of the kind admissible at trial. Fed. R. Civ. P. 56(e).

Under Section 500.1209(2)-(3) of the Michigan Essential Insurance Act (MEIA), insurance companies cannot terminate non-exclusive agents "primarily" because of the location in which they sell insurance or because of a high actual or expected loss ratio, if that ratio is "related in whole or in part to the geographical location of that business." Mich. Comp. Laws § 500.1209(3)(a)-(b). The purpose of the statute is to prevent so-called "redlining." *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 551 (Mich. 1999). It does not prevent the termination of agents who fail "to perform as provided by the contract between the parties."

No. 03-2618
Nassif

Mich. Comp. Laws § 500.1209(2)(d).

NIA claimed that it was terminated in violation of the MEIA because it sold policies in a geographic region with high loss ratios. The Companies argued that they ended their relationship with NIA not because of the location in which the Agency sold its policies but rather because NIA failed to abide by the Companies' rules and guidelines.[1] The Companies offered admissible evidence in the form of depositions, internal business documents, contracts, and affidavits to buttress their claims.

In rebuttal, Appellant offered only the unsigned, unnotarized "affidavit" of Walid Nassif, which made the following conclusory assertions: (1) that his authority to bind policies was restored to him at the November 7, 2001 meeting; (2) that he "followed all of the Defendants' recommendations;" (3) that he obtained prior approval for all policies he wrote even though there was no requirement that he do so; and (4) that the Companies told him he was being terminated due to his high loss ratio.

_____

[1] NIA cites the dissent in *Beydoun v. Republic Ins. Co.*, a case that also deals with an Arab-American insurance agent who sells insurance in East Dearborn being terminated for malfeasance, as evidence that NIA cannot be terminated because of its high loss ratios. No. 96-1292, 1997 LEXIS 12018 (6th Cir. May 21, 1997). However, the majority's interpretation of the MEIA says exactly the opposite:

> When an agent handles only a particular circumscribed territory such as East Dearborn and suffers huge losses over a long period of time, the losses -- literally speaking -- bear some 'relationship' to the 'location' of the risks underwritten. But firing an agent with huge losses that are clearly related to flawed business practices is not redlining, and there is no Michigan case suggesting that it is. GNB's termination under these circumstances clearly does not constitute redlining and is not in violation of the Michigan Essential Insurance Law [sic].

*Id.* at *10.

No. 03-2618
Nassif

Unsigned affidavits do not comply with Fed. R. Civ. P. 56(e). *See DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 471 (7th Cir.1990); *Mason v. Clark*, 920 F.2d 493, 495 (8th Cir. 1990); *Wright v. Asset Acceptance Corp.*, No. C-3-97-375, 2000 WL 33216031, at *5 (S.D. Ohio 2000) ("it is axiomatic that an 'affidavit' which is unsigned and not notarized cannot qualify as proper Rule 56 evidence."). However, even if Nassif's affidavit were admissible, under Fed. R. Civ. P. 56(e), an affidavit offered in response to a motion for summary judgment must "set forth specific facts" and not rest on "mere allegations." Nassif's affidavit does not give specific facts. Furthermore, conspicuously absent from NIA's case is any written evidence to support his claims. He does not, for instance, provide a letter reauthorizing him to bind policies after his suspension, nor does he rebut the Companies' documents showing that he sold policies on unacceptable properties. The fact that he might only have done so several times is irrelevant since the Companies gave him ample warning that *any* further breaches of policy could be grounds for termination.

NIA failed to produce a scintilla of evidence that the Companies had terminated his agency contract for anything other than failure to follow the proper underwriting guidelines and rules. We therefore **AFFIRM** the judgment of the district court.