# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN HOHENSEE and DONNA HOHENSEE
d/b/a RIVER CITY LANES,

Plaintiffs-Appellants,

v

NASSER INSURANCE AGENCY, INC. and
DAMON NASSER,

Defendants-Appellees.

UNPUBLISHED
November 3, 2015

No. 321434
Iron Circuit Court
LC No. 13-004797-NZ

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

In this insurance coverage case, plaintiffs appeal as of right the trial court's order granting summary disposition to defendants. We affirm.

## I. FACTS

Plaintiffs claim that defendant Damon Nasser misrepresented the nature of the coverage when he sold them an insurance policy on their bowling alley such that they thought they were entitled to the full policy limits in the event of a total loss. On May 20, 2011, the bowling alley was totally destroyed by fire. The property was insured by North Pointe Insurance (North Pointe) with a policy that provided $500,000 of coverage for the building, $25,000 for personal property, and $79,000 for business income loss.

On April 12, 2011, North Pointe provided a valuation of the property and advised defendants that the bowling alley might be underinsured. The valuation indicated that as of September 2010, the cost of reconstructing the building would be $842,948 and the actual cash value of the equipment was $227,000, for a total of $1,069,948. The valuation showed that the $500,000 limit was insufficient to cover the cost of replacing the subject property in the event of total loss.

On April 20, 2011, defendant Nasser discussed the valuation with plaintiff John Hohensee. Hohensee claimed that Nasser explained that under the policy in place with the $500,000 limit he would get $500,000 in case of a total loss regardless of whether he rebuilt. Hohensee believed that the words "agreed value" in the insurance policy supported his claim.

-1-

Nasser did not think he mentioned any amount that would be paid because he was not an adjuster. Nasser said he did not remember if he told Hohensee that a condition of receiving $500,000 in the event of a total loss on an agreed value policy was to rebuild the property. Hohensee received but never looked at his insurance policy to assess whether his coverage was appropriate.

The subject property was listed for sale at $225,000, including the goodwill and a liquor license, when it was destroyed by fire on May 20, 2011. Plaintiffs decided not to rebuild and after submitting a claim, ultimately received insurance proceeds totaling $236,148 from North Pointe. Plaintiffs filed this action arguing that Nasser misrepresented the coverage provided by the policy. The trial court granted defendants' motion for summary disposition.

## II. STANDARD OF REVIEW

This Court reviews summary disposition rulings de novo. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). This Court also reviews de novo the proper interpretation and application of an insurance policy. *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 196; 702 NW2d 106 (2005). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by looking at the pleadings alone, *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994), and may be granted where the opposing party has failed to state a claim on which relief can be granted, MCR 2.116(C)(8). All factual allegations in support of the claim are accepted as true. *Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995). The motion should be granted only when the claim is "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006). In deciding a summary disposition motion under MCR 2.116(C)(10), this Court considers all the evidence, affidavits, pleadings, admissions, and other information available in the record in a light most favorable to the nonmoving party. *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 30-31; 651 NW2d 188 (2002). Summary disposition should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). In *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996), our Supreme Court delineated the evidentiary requirements each party must meet to survive summary disposition under MCR 2.116(C)(10):

> In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [internal citations omitted].

-2-

### III.  INSURANCE AGENT'S DUTY

Plaintiffs argue that the trial court erred in ruling that defendant Nasser did not owe any legal duty to plaintiffs and that there were no genuine issues of material fact with regard to whether defendants breached any duty of care owed to plaintiffs under either a misrepresentation or negligence theory.  We disagree.

Plaintiffs did not specify whether the alleged misrepresentation was fraudulent or innocent.  "The elements of fraudulent representation are[:] (1) the defendant made a material representation, (2) the representation was false, (3) when making the representation, the defendant knew or should have known that it was false, (4) the defendant made the representation with the intention that the plaintiff would act on it, and (5) the plaintiff acted on it and suffered damages as a result."  *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 688; 599 NW2d 546 (1999).  The plaintiff's reliance on the representation must have been reasonable. *Id.* at 690.  A claim of innocent misrepresentation is shown if a party to a contract detrimentally relied upon a false representation in such a manner that the injury suffered inured to the benefit of the party who made the representation.  *Id.* at 688.

In this case, plaintiffs' claim for misrepresentation is not viable in light of their admitted failure to read the insurance policy.  An insured is obligated to read the insurance policy and to raise questions concerning coverage within a reasonable time following the issuance of the policy.  *Harts v Farmers Ins*, 461 Mich 1, 8 n 4; 597 NW2d 47 (1999).  "Consistent with this obligation, if the insured has not read the policy, he or she is nevertheless charged with knowledge of the terms and conditions of the insurance policy."  *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 395; 729 NW2d 277 (2006).  Hohensee testified that he never looked at his insurance document to verify whether his coverage was appropriate.   Both innocent misrepresentation and fraudulent misrepresentation require that a plaintiff establish reasonable reliance on the alleged material misrepresentation.  *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 39; 761 NW2d 151 (2008).  A party cannot prevail on a misrepresentation claim premised on misrepresentations that are contrary to the unambiguous terms of an insurance policy.  *Id.* at 39-40.  Although there is no common law duty to investigate, "[i]gnoring information that contradicts a misrepresentation is considerably different than failing to affirmatively and actively investigate a representation."  *Titan Ins Co v Hyten*, 491 Mich 547, 555-556 n 4; 817 NW2d 562 (2012).  Given plaintiffs' admitted failure to read the policy, there is no genuine issue of material fact regarding the element of reasonable reliance, and defendants are, therefore, entitled to judgment as a matter of law with respect to plaintiffs' claim for misrepresentation.

Under the theory of negligence, plaintiffs still cannot prevail as a matter of law because defendants did not breach their duty, if any, and causation was lacking.  An insured's failure to read the policy is not a bar to his or her recovery under a negligence theory of relief, and where an agent owes a duty to the insured, the insured's failure to read the policy is relevant to the issue of comparative negligence to be weighed against the agent's negligence.  See *Zaremba*, 280 Mich App 29-36.  In an action for negligence, a defendant may not be held liable where there is not a prima facie showing of a duty, breach of that duty, causation, and damages.  *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000).

It is well established that, in a negligence action, the threshold question, "[w]hether a duty exists[,] is a question of law solely for the court to decide." *Harts*, 461 Mich at 6. Our Supreme Court has held that "except under very limited circumstances," an insurance agent owes no "affirmative duty to advise or counsel an insured about the adequacy . . . of coverage." *Id.* at 2. A "special relationship" between the insured and its agent may give rise to a duty to advise under limited circumstances. *Id.* at 10. The *Harts* Court identified four exceptions to the general no-duty-to-advise rule as follows:

> (1) [T]he agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Id.* at 10-11.]

Here, there is no evidence that Hohensee made an ambiguous request requiring a clarification, or made an inquiry that might have required Nasser's advice which was followed by inaccurate advice. Nor is there any evidence that Nasser assumed an additional duty by either express agreement with or promise to Hohensee.

For a "special relationship" to exist, there needs to be some type of interaction on "a question of coverage" with the insured relying on the expertise of the insurance agent to the insured's detriment. *Harts*, 461 Mich at 10-11 quoting *Bruner v League General Ins Co*, 164 Mich App 28, 34; 416 NW2d 318 (1987). Plaintiffs failed to establish a necessary "special relationship" that would give rise to the existence of tort duties because, as discussed above, there is no genuine issue of material fact regarding reasonable reliance.

Even if Nasser, as an independent agent, owed a fiduciary duty to plaintiffs, plaintiffs still cannot prevail because Nasser did not breach such a duty. Fiduciary duties owed by an insurance agency vary depending upon "the agent's status as an independent or exclusive agent." *Genesee Foods Services, Inc v Meadowbrook, Inc*, 279 Mich App 649, 654; 760 NW2d 259 (2008). In *Genesee Foods Services*, this Court addressed the duty owed when an independent agent assists a customer with procuring insurance coverage as follows:

> [B]ecause [the agents] were independent insurance agents when they assisted [the] plaintiffs, their primary fiduciary duty of loyalty rested with [the] plaintiffs, who could depend on this duty of loyalty to ensure that [the agent] [was] acting in their best interests, both in terms of finding an insurer that could provide them with the most comprehensive coverage and in ensuring that the insurance contract properly addressed their needs. The primacy of this relationship between an insured and an independent insurance agent is reflected in Michigan caselaw, which, as stated earlier, holds that "the independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer." [*Id.* at 656, quoting *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305, 310; 583 NW2d 548 (1998).]

An agent's fiduciary duty requires the agent to use reasonable diligence and care to procure insurance as requested by an insured. *Zaremba*, 280 Mich App at 37-38. The record

demonstrates that Hohensee sometimes had difficulty in timely paying the insurance premium and that he could not afford to buy an extra policy to cover the replacement cost. Nasser conveyed the information received from North Pointe to Hohensee, discussed the available options, and procured coverage that maintained a low premium with a maximum coverage of 500,000. While there was testimony that Hohensee misunderstood the meaning of the words, "agreed value" as found in the policy, and he offered testimony that Nasser told him that he would receive 500,000 regardless of whether he rebuilt, the policy is not ambiguous on that point and Hohensee never made a request that he receive a policy which would deliver that result. Even if Hohensee harbored a subjective intent that the property be insured to some higher replacement value at the time of the fire, the subject property had been on the market listed at $225,000, and plaintiffs received from North Pointe $236,148 for the fire damage. Although North Pointe's 2010 valuation of the property showed that the actual cash value of the building was $354,038, plaintiffs did not present evidence that their agreed value policy was insufficient to cover the fire loss.

Plaintiffs also failed to establish causation. To establish proximate cause, two elements must be proven: cause in fact and legal cause. *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). In general, to prove cause in fact, a plaintiff must show that "but for" the defendant's actions, the plaintiff's injury would not have occurred. *Id.* at 163. If cause in fact is established, the issue becomes whether the defendant's actions were the legal cause of the injury. *Id.* To be the legal cause of the injury, the plaintiff must show that it was foreseeable that the defendant's conduct would create a risk of harm, and that the result of that conduct and intervening causes were foreseeable. *Weymers v Khera*, 454 Mich 639, 648; 563 NW2d 647 (1997) citing *Moning v Alfono*, 400 Mich 425, 439; 254 N.2d 759 (1977). Here, cause in fact was lacking because plaintiffs failed to show that but for defendants' actions, their damages would not have occurred. The record shows that Hohensee understood that he could purchase a higher limit to cover the replacement cost, but he could not afford it. Plaintiffs cannot prove that had it not been for Nasser's alleged misrepresentation, they would not have selected the agreed value policy option.

In addition, it was plaintiffs' decision not to rebuild the bowling alley but to cash out, which was not caused in any way by defendants' actions. The record establishes that when Hohensee met with Nasser on April 20, 2011, he had no plans about whether to rebuild the property or cash out in the event of a total loss. Hohensee testified that he did not recall if he had any discussion with Nasser about that matter. The evidence indicates that plaintiffs decided to cash out rather than to replace the building after the fire. Had Hohensee read his policy, he would have known that he would receive more by choosing to rebuild the property. Plaintiffs' argument is premised on a misunderstanding of what "agreed value" means. According to the plain language of the insurance contract, "agreed value" is an amount that the insurer will not exceed in paying for the loss of or damage to the insured property. "Agreed value" is not, as plaintiffs relied, a guaranteed amount to be paid in the event of a total loss of the property. Hohensee is charged with knowledge of the policy's terms and conditions. Moreover, he could have contacted Nasser with questions concerning coverage under the agreed value policy, but he did not do so. Therefore, plaintiffs cannot establish the requisite element of causation. Accordingly, the trial court did not err in granting summary disposition in favor of defendants.

-5-

Affirmed.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan