*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COLLEEN BODNAR, GREG BOZIMOWSKI, CAROL BURKE, GLENDA CALVIN, KEVIN CARDWELL, LESLIE CARDWELL, ANDREA CHELOTTI, JANA CHRUMKA, JOHN CIROCCO, CECILIA DURONIO, SHARON ESGUERRA, MARIANNA FLATT, MARIA GAMBLE, CHERYL ROBB-GENEVICH, KIM GLANDA, BECCA GRAHAM, MARY MARGARET GULOWSKI, ANGELIQUE GWIN, CHRISTYNE ISON, STEVE KISH, HEATHER KWIATKOWSKI, ROBERT LOSEY, KATHLEEN MCNELIS, JESSICA MAST, GREG O'DELL, OSCAR ONG, CHRISTINA POTKAY, KIMBERLY RAFFLER, BRUCE REED, NANCY RICHARDS, KSENIA SCEKIC, SARAH SIMS, CINDY THORNE, KELLY TRETHEWEY, YOLANDA WILKINS, MARIE WILLIAMS, SHEILA WILLIAMSON, KENNETH ANDREW WILLARD, and RUTHANNE WIRTH,

        Plaintiffs-Appellants/Cross-
        Appellees,

and

TRACY CHASE,

        Plaintiff/Cross-Appellee

v

ST. JOHN PROVIDENCE, INC. and ASCENSION HEALTH,

        Defendants-Appellees/Cross-
        Appellants.

FOR PUBLICATION
March 5, 2019

No. 337615
Oakland Circuit Court
LC No. 2016-152330-CB

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

SHAPIRO, J. (*concurring in part and dissenting in part*).

I respectfully dissent from the majority's decision to affirm summary disposition of plaintiffs' breach of contract claim. I conclude that, under *Cain v Allen Elec & Equip Co*, 346 Mich 568; 78 NW2d 296 (1956), defendant St. John Providence, Inc.'s policies amounted to an offer of severance pay that plaintiffs accepted by continuing to work at the hospitals. The scope of the disclaimer language and the meaning of the phrase "current pay rate" are ambiguous and therefore present questions of fact to be resolved by a jury.[1] I also conclude that there are material question questions of fact as to plaintiffs' promissory estoppel claim and that plaintiffs should be allowed to engage in discovery to determine whether defendant Ascension Health is a proper party to this action.[2]

## I. BREACH OF CONTRACT

### A. EXISTENCE OF CONTRACT

The basic elements of a contract are an offer, an acceptance, and consideration. *Kirchhoff v Morris*, 282 Mich 90, 95; 275 NW 778 (1937). Plaintiffs rely primarily on *Cain*, 346 Mich 568, in which the Supreme Court unanimously held that the plaintiff had a contractual right to severance pay as defined in the employer's written policy. In *Cain*, the plaintiff was an at-will employee. *Id*. at 570. The employer had a policy providing that an employee would be paid "separation pay." *Id*. The policy also provided that an executive, as the plaintiff was, "having 5 to 10 years employment should be entitled to 2 months termination pay." *Id*. at 571 (quotation marks omitted). In October, the plaintiff submitted his resignation effective December 15; the

---

[1] I disagree with the majority that we should review the trial court's ruling as being made under MCR 2.116(C)(8) (failure to state a claim). I would review the trial court's summary disposition ruling under MCR 2.116(C)(10) because the court found that plaintiffs failed to create a genuine issue of material fact on multiple issues and it relied on documents outside of the complaint. See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). MCR 2.116(C)(10) allows a trial court to grant summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "To determine if a genuine issue of material fact exists, the test is whether the kind of record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994) (quotation marks and citation omitted). In making this determination, we view the record in a light most favorable to the nonmoving party. See *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

[2] I agree, however, with the majority's ruling that the trial court correctly granted summary disposition of plaintiffs' conversion claims. I also concur with the majority's ruling as to defendants' cross-appeal.

employer then terminated the plaintiff's employment effective immediately. *Id*. at 571. The employer denied the plaintiff severance pay and suit followed. *Id*. at 572. The trial court ruled in the plaintiff's favor and, on appeal, the employer argued that its policies did not establish a contract and instead were "a mere gratuitous statement of policy or intention" that "contained no suggestion of agreement, nothing of promise, no offer of any sort . . . ." *Id*. at 573. Because there was no offer, the argument ran, "there could have been no acceptance and hence no contract." *Id*. at 573-574.

The Supreme Court first acknowledged the benefits that employers derive from offering "dismissal compensation." *Id*. at 574-576. The Court extensively quoted a treatise on that subject, which provided in part that "[p]ublic opinion, the needs of the employees and the desire for a permanent, loyal, and efficient working force have united in making dismissal compensation seem the proper course for a number of American companies." *Id*. at 576, quoting Hawkins, Dismissal Compensation (1940), p 25. The Court also reviewed out-of-state caselaw holding that the offer of such compensation was binding on the employer.[3] *Id*. at 576-579. After this review, the *Cain* Court first determined that the employer's severance pay policy constituted an offer:

> We cannot agree that all we have here is a mere gratuity, to be given, or to be withheld, as whim or caprice might move the employer. An offer was made, not merely a hope or intention expressed. The words on their face looked to an agreement, an assent. The co-operation desired was to be mutual. Did the offer consist of a promise? "A promise is an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such manner to a promisee that he may justly expect performance and may reasonably rely thereon." (Corbin on Contracts, § 13.) The essence of the announcement was precisely that the company would conduct itself in a certain way with the stated objective of achieving fairness, and we would be reluctant to hold under such circumstances that an employee might not reasonably rely on the expression made and conduct himself accordingly. [*Id*. at 579.]

"As for consideration," the Court stated: "Suffice in this respect, upon the authority of a multitude of cases, to point out that not only were there rewards to the employee, but, in addition, substantial rewards to the employer, arising, in part, out of the accomplishment of 'the daily work of the organization in a spirit of co-operation and friendliness.' " *Id*. at 579. The Court then concluded that the plaintiff had accepted the employer's offer by continuing his employment "beyond the five-year period specified" in the policy, *id*. at 580, qualifying him for an executive's severance pay. *Id*. at 571.

*Cain* is binding precedent that we must follow. *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191; 880 NW2d 765, 772 (2016). And, as the majority acknowledges,

---

[3] See e.g., *Hercules Powder Co v Brookfield*, 189 Va 531; 53 S Ed 2d 804, 808 (1949) (holding that an employer's offer of "dismissal pay" was binding when it was made in anticipation of "reductions of forces."). Though decided in 1949, *Hercules Powder Co* remains good law.

*Cain* was decided under traditional contract principles. Applying *Cain* to this case, I think it is clear that St. John's highly detailed polices constituted an offer for severance pay that plaintiffs accepted by continuing to work at St. John's hospitals. I would also conclude that there is adequate consideration to uphold the contract. The timing of the revision to the policies is no coincidence. St. John was in the process of outsourcing its anesthesiology services and the revised polices provided assurances to the plaintiffs that they would be offered severance pay in the event that that a comparable job was not offered to them. The benefit received by St. John, of course, is that the polices prevented an exodus of certified registered nurse anesthetists in the event that rumor and speculation surfaced regarding St. John's plan to outsource anesthesiology services. Further, plaintiffs had to perform in several ways in order to qualify for the severance pay including participating in St. John's transition plan, working through the defined date of termination, and meeting multiple other requirements. I also note that the amount of severance pay was directly linked to the employee's years of service, a clear indication that the payment constituted deferred compensation, i.e., payment to be made later for work done previously. See *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 529-530; 473 NW2d 652 (1991).

In ruling that plaintiffs' contract claim fails as a matter of law, the majority focuses on the disclaimer language found in the "Staff Reduction in Force/Workforce Transition" policy (RIF Policy), which provides in full:

> St. John Providence is an "at-will" employer. This means that no associate has a guarantee of employment for any definite duration of time. In addition, no associate is guaranteed that they will only be removed from employment if there is just cause for their removal. Any associate may be removed at any time and for any or no reason. As such, this policy provides guidelines only and does not constitute a contract of any type, or guarantee of continued employment in any position for any duration.

*Cain* was silent as to the presence of a provision disclaiming a legal right or claim under the policy.[4] Regardless, the statement that the RIF Policy "does not constitute a contract of any type" must be read in context of the full text of the provision. See *Auto Owners Ins Co v Seils*, 310 Mich App 132, 148; 871 NW2d 530 (2015). It is clear that the import of this provision is to reiterate to St. John's employees that they may be terminated at will and that the RIF Policy is not creating a contract of just-cause employment. However, this is irrelevant because plaintiffs do not assert that the policies provided them with just-cause employment.

Further, I do not see why a disclaimer in the RIF Policy should be seen as controlling the "Severance Pay and Benefits for Staff (Non-Management) Associates" policy (Severance Pay Policy). While the RIF policy provides the general procedure to implement staff reduction and reassignment, the Severance Pay Policy, as one might imagine, pertains solely to eligibility for and computation of severance pay. The disclaimer language provides only that "this policy," i.e., the RIF Policy, does not create an employment contract. Further, the primacy of the

---

[4] The majority characterizes as a "disclaimer" the policy language in *Cain* providing that the policy may be amended at any time.

Severance Pay Policy is made clear in its text: "[t]his policy supersedes any other policy or procedure that may conflict with this policy, with the exception of Employment at Will. It is administered in conjunction with Policy – Staff Reduction in Force. *Where differences exist, this policy takes priority* for those eligible for coverage." (Emphasis added). Read together, the RIF and Severance Pay Policies are, at a minimum, ambiguous as to whether defendant was disclaiming the terms of severance or merely reiterating that employees did not have a just-cause contract for employment. *Scott v Farmers Ins Exch*, 266 Mich App 557, 561; 702 NW2d 681 (2005) ("A contract is ambiguous when its words may be reasonably understood in different ways."). Therefore, the meaning and scope of the disclaimer language is a question of fact for a jury. *Farmer's Ins Exch v Kurzmann*, 257 Mich App 412, 418; 668 NW2d 199 (2003) ("Ambiguities in a contract generally raise questions of fact for the jury[.]").

To summarize, *Cain* broadly held that severance pay policies are contractually binding. *Cain* did not address the effect of policy language disclaiming the creation of an employment contract, but under the circumstances present here, I would decline to rule as a matter of law that defendant was not making a contractual offer to plaintiffs. Considering the ambiguous contract language, the benefit that the policies conferred upon St. John, and the fact that St. John never revoked the Severance Pay Policy, I would hold that there is a material question of fact for a jury regarding whether St. John made plaintiffs a contractual offer.

## B. THE MEANING OF THE CONTRACT

The next issue is whether there is a question of fact about the meaning of the phrase "current pay rate." It is undisputed that the policies do not define that phrase. In affidavits, St. John's HR manager and vice president stated that St. John considers only the "hourly pay rate," in determining whether a comparable job offers an employee 80% of current pay rate. Plaintiffs argue, however, that other policy provisions show that when St. John wants to refers to an employee's hourly pay rate, it knows how to do so. For example, severance pay is calculated by "multiplying the associate's *current base hourly rate* x current standard weekly hours." (Emphasis added). In addition, a chart in the Severance Pay Policy refers to "Weeks of Base Pay." Given that, reasonable minds could conclude that an employee's "current pay rate" is distinct from, and broader than, an employee's base or hourly pay rate.

The majority concludes that "current pay rate" is unambiguous, reasoning in part that a "common understanding" of that phrase would not include benefits. I would not be so bold as to determine the meaning of that phrase as a matter of law given the different iterations found in the policy, as discussed above. However, I suspect that, when confronted with the circumstances faced by plaintiffs, reasonable people would consider more than hourly pay in determining the "pay rate" of the prospective employment. The majority also concludes that interpreting "current pay rate" to include all wages and benefits would lead to unreasonable computational issues. In an age of advanced analytics, I am skeptical that assigning a numerical value to an employee's total compensation is "virtually impossible." In any event, whether such problems are real or fanciful, they are not grounds for summary disposition before an answer has even been filed and discovery conducted. "Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009).

For those reasons, I would conclude that the phrase "current pay rate" is ambiguous and presents a question of fact for a jury.[5]

## II.  PROMISSORY ESTOPPEL

The elements of promissory estoppel include: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 686-687; 599 NW2d 546 (1999).  "[T]he sine qua non of the theory of promissory estoppel is that the promise be clear and definite. . . ." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).  "In determining whether a requisite promise existed, we are to objectively examine the words and actions surrounding the transaction in question as well as the nature of the relationship between the parties and the circumstances surrounding their actions." *Novak*, 235 Mich App at 687.

Under the doctrine of promissory estoppel, "[t]he existence and scope of the promise are questions of fact . . . ." *State Bank of Standish v Curry*, 442 Mich 76, 84; 500 NW2d 104 (1993). Similar to my analysis of plaintiffs' contract claim, I would conclude that a reasonable jury could find that St. John's highly detailed policies governing payment of severance pay constituted a promise that was intended to induce action on behalf of the employees, i.e., to remain and seek comparable employment through St. John.  The effect of the no-contract disclaimer language in the RIF Policy upon the Severance Pay Policy is a question of fact because (1) promissory estoppel assumes the absence of a contract; (2) a reasonable person could conclude that St. John was emphasizing that it was an at-will employer rather than disclaiming a promise to pay severance pay and benefits; and (3) a reasonable person could conclude that the RIF Policy disclaimer did not apply to the Severance Pay Policy.  Thus, I would reverse the trial court's decision to grant summary of plaintiffs' promissory estoppel claim.

## III.  ASCENSION

Lastly, I agree with plaintiffs that the trial court erred by dismissing Ascension on the ground that it was not a proper party to the action.  If Ascension is merely St. John's parent company, then it should be dismissed from the case.  However, given that no discovery has occurred, summary disposition on this disputed issue is premature. *Marilyn Froling Revocable Living Trust*, 283 Mich App at 292.  Plaintiffs are entitled to conduct discovery on the nature of the corporate relationship after which the trial court could determine whether Ascension is a proper party.  Therefore, I would reverse the trial court's grant of summary disposition to Ascension.

/s/ Douglas B. Shapiro

---

[5] However, I agree with the majority that the RIF policy does not support plaintiffs' claim that they were entitled continued employment for a "placement period" of six months.